*Middlesex,*
July, 1851.

Clark
*v.*
Saybrook.

CLARK *against* The town of SAYBROOK :

IN ERROR.

The provision in the statute relating to highways and bridges, *ch.* 1. § 12. *p.* 341. (ed. 1838.) empowering the county court to set aside a verdict of the jury re-assessing damages, if, upon exception taken, it shall appear that the jury have been improperly summoned, or have conducted corruptly, and declaring, that otherwise their doings shall be conclusive, is applicable only to their doings strictly within their jurisdiction ; and when they exceed it, their proceedings, being unauthorised, are to be set aside.

The proper and only time to take exception to the reassessment, as not being within the cognizance of the jury, is, after the return of their report to the court ; and then upon a remonstrance, shewing that they had exceeded their powers.

To entitle a person to the assessment of damages in his favour, sustained by him, by the laying-out of a highway under the 12th section of said statute, the damages must be direct and immediate, producing a legal *injury*, and not remote and consequential.

And such an assessment of damages is in conformity to and satisfies the provision in our constitution, (*art.* 1. § 11.) that the property of no person shall be taken for public use, without just compensation therefor.

Therefore, where a person who was not an owner of any land through which the highway was laid out, and the only damage that he had sustained, or could sustain, consisted in his being deprived, to some extent, of the use of a creek crossed by the highway, in which he had no exclusive right, for the transportation of stone from his quarry and produce

*Middlesex,*
July, 1851.

Clark
*v.*
Saybrook.

from his land; it was held, that he was not entitled to have damages assessed to him, on the laying-out of such highway.

An obstruction in a public highway, in the use of which an individual has no right, except in common with the public generally, even if unauthorised and illegal, does not constitute an injury, for which such individual can maintain a private action; but the legal remedy is at the suit of the public, by indictment or information for a public nuisance.

By the true construction of the statute relating to highways, the assessment of damages, is to be confined to the owners of land through which the highway is laid out.

The power of eminent domain, of which the laying-out of highways is a part, resides in the state, to be exercised by the legislature, unrestricted, except by some constitutional provision.

THE proceeding in this case was commenced by a petition to the county court, brought by *Peres Haskill* and others against the town of *Saybrook,* for an alteration of the public highway leading from *Deep River* to *Meadow Woods* and *Essex;* which the select-men had refused to lay out.

In *April,* 1847, the commissioners for *Middlesex* county, to whom the petition had been referred, made their report, laying out a new road, and recommending the erection of a bridge over the deepest place of the creek or cove where the road thus laid out would cross it, and assessing the damages accruing thereby to individuals. *Giles O. Clark,* not one of those individuals, but claiming to be interested in the laying-out of the road, as owner of a valuable quarry and wharf near the creek, through which he had been accustomed to transport stone and hay to market, appeared in court, and complained of the assessment of damages, and moved for a jury to reassess damages, and to assess to him his reasonable damages for the injury to him, by the laying-out of the road. This motion was allowed; and at the succeeding term of the court, in *October,* 1847, it was ordered, that a jury of six disinterested freeholders should be summoned to reassess damages to said *Clark.* After due notice to the parties interested, the jury assessed to him the sum of 224 dollars for his damages, and made their report to the court. Against the acceptance of this report, as well as that of the county commissioners laying out the road, the town of *Saybrook* remonstrated. The court, after hearing the parties on such remonstrance, found the following facts.

At ordinary low water in *Connecticut* river, the water does not flow to the place where the bridge is contemplated, by

the laying-out of the commissioners, to be built; but there <span style="float:right"><em>Middlesex,</em><br>July, 1851.</span> is a channel or cove [which will hereafter be designated as a *creek*,] on the ground between the river and the place of such bridge, and thence for more than a fourth of a mile beyond it, into which, as the tide rises in the river, the water flows therefrom, up to and beyond such place, and recedes with the falling tide, leaving the creek nearly dry. Between the tides, the proprietors of lands in the vicinity have always been accustomed to cart across the creek loads of hay. A bar at the mouth of the creek, at ordinary low water, prevents any vessel, boat or scow, drawing more than from ten to twelve inches of water, from passing into it from the river; but at ordinary high water, the water rises on such bar to the height of from two and a half to three feet, so that, at that time, boats or other water-craft, drawing not more than three and a half to four feet of water, may go over the bar into the creek, and up to the place of the contemplated bridge, and more than a quarter of a mile beyond it. The court further found, that said *Clark* had no right in the use of the creek, except in common with the public generally; and thereupon the court disallowed the assessment of damages to him. In other respects, the court accepted the report of the county commissioners, and declared the highway, as laid out by them, should be and remain a public highway in the town of *Saybrook*.

*Clark* thereupon brought a writ of error to the superior court, holden in *August*, 1850; and the questions of law arising thereon were reserved for the advice of this court.

*Toucey* and *Vinal*, for the plaintiff in error, contended, 1. That *consequential* damages may be as great as *direct*, and equally requiring remuneration. Suppose a new road is so laid out and built as to turn the water from a factory worth ten thousand dollars, or to cut off all access to a valuable wharf; is the suffering party entitled to no compensation, because the injury is consequential?

2. That the *principle* authorising such damages, is recognised and constantly acted on, at common law, in that large class of suits known as actions *on the case*, and in courts of equity, by injunction. This principle is one of extensive, if not of universal, application.

*Middlesex,*
July, 1851.
_____
Clark
*v.*
Saybrook.

3. That the statute gives, in express terms, the right to the damages allowed in this case. " Any person interested"—" any person aggrieved"—" in any manner embraced"—are the terms used to say who are entitled to damages. Such has been the construction of its language, by this court. *Windsor* & al. v. *Field* & al. 1 *Conn. R.* 279. Such also has been the construction of exactly *similar* language elsewhere. *Enfield Toll Bridge Co.* v. *Hartford and New-Haven R. R. Co.* 17 *Conn. R.* 454. This case is not like that of *Hollister* v. *Union Co.* 9 *Conn. R.* 436. which was an action against a party acting under a statute, and claiming to be justified by it. But this is an application for compensation under a statute, and in the manner pointed out by the statute, by an express provision. The decision in the case referred to, and also in *The British Cast Plate Manufacturers* v. *Meredith* & al. 4 *Term R.* 794. goes upon the ground that no redress is provided by the statute. In the latter case, the court say, " if the legislature think it necessary, as they do in many cases, they enable the commissioners to award satisfaction to the individuals who happen to suffer ; but if there be no such power, the parties are without remedy," &c. Here there is such power, in a jury specially provided for the purpose. See also *Hooker* v. *New-Haven and Northampton Co.* 14 *Conn. R.* 174. per *Sherman,* J. S. C. 15 *Conn. R.* 312. *Denslow* v. *New-Haven and Northampton Co.* 16 *Conn. R.* 98.

4. That the verdict of the jury, in this case, is *conclusive.* No exception has been taken, that the jury were improperly summoned, or that they conducted corruptly. *Stat.* 341. § 12. (ed. 1838.) *Plainfield* v. *Parker,* 11 *Conn. R.* 581. *Winchester* v. *Hinsdale,* 12 *Conn. R.* 100.

5. That the difficulty of distinguishing between consequential injuries, which are remediable and those not so, does not authorise the court to set aside a verdict of the jury. In the first place, there is no more difficulty here, than in actions on the case at common law, *e. g.*, for a nuisance, &c. But secondly, the distinction is sufficiently palpable for practical purposes. *Hooker* v. *New-Haven and Northampton Co.* 15 *Conn. R.* 319.

6. That the jury had jurisdiction over the persons, the process and the assessment of damages. The amount of

damages is, of course, a matter of discretion, which they <span style="float:right">*Middlesex,*<br>July, 1851.</span> alone can determine. *Stat.* 339. & seq. § 11. 12. (ed. 1838.)

<span style="float:right">Clark<br>*v.*<br>Saybrook.</span>

7. That the plaintiff, in this case, had a *special interest,* as owner of a wharf, stone quarry, &c., which entitled him to ask relief. He had an interest *distinct* from that of the public at large.

*Ingham*, for the defendants, contended, That damages could be assessed only for a direct injury to land, occasioned by laying a road over it, and not for a *consequential* injury. If the plaintiff had a right to have damages assessed to him, it must be by statute, or the common law.

1. The statute gives no such right. *Stat.* 420. *ch.* 2. § 21. Towns are required to make roads and the select-men to lay them out, first giving reasonable notice to the *owners of the land through which the same is laid out, &c.,* and the damages done *such owners*, shall be paid &c., and upon payment of *such damages,* the road is to be *opened, &c.*—No other description of damage is any where mentioned, and no power is given to assess damages for any other cause.

Perhaps it will be said, that the powers of county commissioners are not thus restrained. The language, § 24. is, "The commissioners shall assess the damages which will thereby accrue to individuals." What individuals? The 21st section, which is the basis of all the proceedings, gives the answer—"the *owners of the land* through which," &c. It was unnecessary to repeat in the 24th section or in the 25th, which provides for the reassessment of damages by a jury, what had been clearly said once for all in the 21st section. The proceedings before commissioners are by way of appeal, and must of course be governed by the same rules that regulate the powers and duties of select-men. The statute gives one rule, and but one. Why should it give more? The reason and damage are the same, whether assessed by select-men, commissioners, or a jury. Whenever the statute speaks of an assessment, or reassessment, of damages, it refers to the damages mentioned in the 21st section; for none other are mentioned any where. If the county commissioners and jury are not bound by the rule prescribed for select-men in the 21st section, *what rule are they bound*

*Middlesex,*
*July, 1851.*

Clark
*v.*
Saybrook.

*by ?* Why none whatever; and is it so, that a jury may assess damages to any one, and for any cause, according to their own whim or discretion? Surely, a proposition so monstrous cannot be maintained.

This is an antient statute; no other construction has ever been given it; none can be, without a perversion of both the language and spirit of it. The present attempt is a mere experiment. Other rules may be prescribed, by other laws, such as relate to turnpikes, rail-roads, canals and other private companies; but under this statute, which stands on different ground, damages against the public for a consequential injury, were never given. The whole proceedings being purely statutory, no powers are possessed but such as are given by statute.

The case of *Hooker* v. *New-Haven and Northampton Co.* 14 *Conn. R.* 146. and all the cases of that class, were against private corporations, whose charters differ materially from the public statutes relating to public highways, and have therefore, no bearing whatever on this case. They proceed on different grounds.

2. This construction of the statute is in accordance with the principles of the common law. It is not pretended, in this case, that the property of the plaintiff is taken, or in any way used by the public; but his *claim* is " that the building of said road and bridge across the creek, as proposed, will greatly obstruct his business in getting out and transporting stones and carrying hay, and will wholly destroy the value of said wharf and quarry." If these averments were true, they do not present a case in which damages can be given as against the *public.* The distinction is betwixt the *public and individuals* or *private corporations;* the former are not liable for mere consequential damages, while the latter may be. *Hollister* v. *Union Company,* 9 *Conn. R.* 439. *Hooker* v. *New-Haven and Northampton Co.* 15 *Conn. R.* 312. *Kary* v. *Lewisville,* 4 *Dana,* 154. *British Cast Plate Manufacturers* v. *Meredith* & al. 4 *Term R.* 194. *Sutton* v. *Clarke,* 6 *Taun.* 29. *Boulton* v. *Crowther,* 2 *Barn. & Cres.* 703. (9 *E. C. L.* 227.) *Lansing* v. *Smith,* 8 *Cowen,* 146. *Burroughs* v. *Housatonic R. R. Co.* 15 *Conn. R.* 125. *Steele* v. *Western Inland Lock Navigation,* 2 *Johns. R.* 283. *Rowe* & al. v. *Granite Bridge Corporation,* 21 *Pick.* 344

5. The complaint of the plaintiff is, not that his property of any kind has been *taken*, but he says, the *public*, (not an individual or private corporation) in the necessary and proper construction of a public highway, may, by remote consequence, disturb him in passing over the creek with his scow. Now, how could damages, in such case, be assessed to him *in advance?* Who could know whether the passage would be obstructed, or to what extent? If the town had no legal right to obstruct it, by the construction of a road, without compensation, the *legal presumption is, that they would not.* What right had the plaintiff or his jury to assume, as they did assume, without evidence, and in the face of this presumption, that the town would wrongfully stop up the creek, or in any way render it useless? How did they know, that a conventient swing bridge would not be placed there ; as there actually was, and is ; in which case, he would suffer no injury, and have no right to complain. For a remote consequential injury which may never happen, it is time enough to ask for damages when it does happen.

If the plaintiff could have shown, that he "would sustain special or peculiar damage from the road, an injury distinct from that done to the public at large," he might, perhaps, have sustained a bill for an injunction, if the acts had been done by an *individual* or *private corporation*. *Bigelow* v. *Hartford Bridge Company*, 14 *Conn. R.* 566. *O'Brien* v. *Norwich and Worcester R. R. Co.* 17 *Conn. R.* 372. But how is the fact? The court find "that the said *Clark* has *no right in the use of said channel*, or cove, *except in common with the public generally.*" This being the extent of the plaintiff's right, what ground does it afford him for an assessment of damages, by the county commissioners, or a jury, against the public?—Manifestly, none at all.—Possessing *no right*, except in common with the public generally, his right is no other than the common right of way or passage ; and he can sustain no special or peculiar damage distinct from that done to the public at large.

STORRS, J. 1. The plaintiff in error insisted, that, as the 12th section of the act relating to highways and bridges, (*Stat.* 340, 1. ed. 1838.) under which the proceedings of the

*Middlesex,*
*July, 1851.*

Clark
*v.*
Saybrook.

county court took place, provides, that that court should have power to set aside the doings of the jury summoned to reassess damages, where it should appear that the jury had been improperly summoned, or had conducted corruptly, and that otherwise their doings should be conclusive as to the assessment of damages, they could be set aside for no other cause; and that, as neither of these exceptions was taken to their report, it was the duty of that court to accept it. The power given to the jury, by that statute, being very special and limited, that provision applies only to their doings, while they confine themselves strictly within it; and when, therefore, they exceed it, their proceedings, being unauthorized, are to be set aside. Hence it was competent for the court to enquire, whether the jury had confined themselves, in their proceedings, within the limits of their jurisdiction, by assessing damages only in a case where they were authorized to act. This enquiry, however, could not take place, by the terms of the statute, when the motion was made for a jury to reassess, for it peremptorily requires the court, upon such motion, to cause a jury to be summoned; and from the nature of the case, it would not be practicable then for the court to determine, whether the ground of damages which would be presented before the jury, would be within their cognizance. It could, therefore, only be made after the report of the jury was returned to the court; and then, upon a remonstrance, shewing that the jury had exceeded their powers; which was the course taken in the case now before us. In this respect, therefore, there is nothing erroneous in the judgment complained of.

2. We come then to the remaining point arising on this writ of error, which is, whether, by the provisions of the statute under which the road in question was laid out, the damages sustained by the plaintiff in error, in consequence of laying it out, were of such a character that he was entitled to have them assessed in his favour by the jury. Under the rule of this and the superior court, respecting assignments of errors, the question is not here presented, whether, if the plaintiff in error was entitled, under the circumstances of this case, to compensation, under the provisions of the constitution respecting private property taken for public use,

and there was no provision in that statute for its payment; or, if the effect of establishing the road were to authorize the erection of a bridge which would be such an obstruction to the navigation of the creek crossed by it, that the law of the state authorizing it would conflict with the power to regulate commerce given by the constitution of the *United States* to Congress, and be therefore void; the judgment of the county court establishing the road, would be merely ineffectual to deprive him of his property so taken for public use, in the one case, or of his right of navigation, in the other; or could also be reversed on a writ of error; and those questions have been noticed by the counsel for the plaintiff in error, in their argument before us, not with a view of procuring a reversal of the judgment of the county court, on the distinct ground or claim that the act under which the proceedings were had before that court, was unconstitutional, but only to induce us to adopt such a construction of that act as would clearly be in accordance with the rightful powers of the legislature, which is never presumed to intend any thing but what is clearly within its legitimate authority: and for that purpose, their suggestions are certainly entitled to much consideration.   But they insist, that, by a true construction of that statute, the plaintiff in error was entitled to the damages assessed to him, by the jury; and our decision of this case must depend upon this question of construction:  if it does not provide for an allowance of damages for an injury like that sustained by him, in the present case, it is clear, that the doings of the jury, which took place only under and by virtue of that statute, were erroneous and properly set aside.   It is also to be remarked, that in the particular proceeding which we are now reviewing, and in which the plaintiff in error claims that error intervened, because the jury were not permitted, by the court, to allow him such damages, the jury were moved for, by the plaintiff in error himself, for the purpose of a reässessment of his damages; and that, coming in as a party to the proceeding, under that statute, in order to avail himself of the benefit of its provisions on that subject, he could not rightfully claim an allowance of damages by the jury, for any injury, except that for which the statute provided that

*Middlesex,*
July, 1851.

Clark
*v.*
Saybrook.

they might be assessed. The proceeding was merely statutory; and therefore, every step taken by the court or jury, must be sanctioned by the statute on which it was founded.

We are thus brought to determine the construction of that statute, with reference to the claim of the plaintiff in error, that he was entitled to have damages assessed in his favour, on the laying-out of the highway. It is conceded, that he was not an owner of any land through which it was laid out, and the only damage which it appears that he could sustain, would be in consequence of his being deprived, to a certain extent, of the use of the creek, for the transportation of his stone from his quarry, and the produce of his land, by the obstruction caused by the bridge where the road crosses it.

The plaintiff in error, in support of his claim that individuals are entitled, not only to direct and immediate, but also to remote and consequential damages, sustained by them, by the laying-out of a highway, of which latter character are the damages in the present case, relies upon the generality of the expressions used in the provisions of the statute in relation to the assessment of damages, in connexion with the judicial construction which he claims has been put upon similar provisions on the same subject contained in various special acts of incorporation, granted for the purpose of making turnpike roads, rail-roads, canals, and other similar works. The 12th section of that act, (*Stat.* 340, 1. ed. 1837.) (as modified by the 12th section of the act of 1841, Acts of 1841, *pp.* 15, 16.) provided, that when any new highway, within a town, where the select-men of that town neglect or refuse to lay out the same, shall be wanting, any person or persons may apply to the county court for that purpose; that such application shall be heard and decided, by the county commissioners; and that they, after taking the oath and giving the notice therein prescribed, " if they shall be of opinion that such highway or road will be of common convenience and necessity, shall proceed to survey and lay out the same, and assess the damage which will thereby accrue to individuals;" and thereupon they are to make their report in writing of their doings, and return the same to the county court; and that, " if any person shall

complain of the assessment of damages, he may move for a jury to reässess the same." *P.* 341. The terms here used, if they are to be taken in an unqualified and unrestricted sense, are undoubtedly sufficiently broad to embrace damage of every description. But that they are to be construed in such a sense, never has been, and obviously cannot properly be, claimed. If such an unlimited meaning were to be attached to them, the consequence would be, that every farmer, merchant, mechanic, innkeeper, and, indeed, every person engaged in any kind of business, would have a right to be remunerated for the loss of profits which he would sustain, by the competition produced, by the establishment of a new highway; persons who would be subject to an increased tax for the support of a religious society, in consequence of a diversion by it, of a portion of its members, to another society; and even those who had been compelled to contribute, by a tax legally imposed on them for the expenses of establishing the highway itself, would be entitled to have such tax refunded. In short, there would be no species of damage, however remote or indirect, which could be traced to the laying-out of the road, that would not present a legal claim for remuneration. No argument is necessary to shew, that such is not the construction of that statute. Its language, therefore, in some cases, is clearly to receive a restricted meaning.

What, then, is the rule of restriction, and what particular species of damage does the statute embrace? We think, that an answer to this question is not difficult. It is the direct and immediate damage resulting from the laying-out of the highway. This rule excludes all indirect and remote, or what is usually termed mere consequential damage, and also any direct or immediate damage occasioned by any other cause than such laying-out. It was, in our opinion, the intention of the legislature, in this statute, to provide remuneration to individuals, only in cases where, in consequence of the laying-out of a public highway, they would, if no such remuneration were provided, sustain what in law is denominated an *injury*, which consists of a violation of one's rights; which would not be the case in the several instances which have been just mentioned, and others of a

*Middlesex,*
July, 1851.

Clark
*v.*
Saybrook.

similar character, which would only be cases of damage without injury, (*damnum sine injuria,*) but which would occur, under the statute in question, only where a person, by the establishment of a road over his land, is directly deprived of the use of it, or of the exercise of some right or privilege attached to it, including also the damage done, by the laying of it out, to the land connected with that which is covered by the highway, and of which it was a part. We are led to this conclusion, by considering the source from which the power of establishing highways emanates, the character of that power, the reason for remunerating persons affected by its exercise, the practical construction heretofore given to our general highway acts, and the consequences of extending such remuneration to such damage as is only remote and merely incidental.

The power of providing highways for the use of the public, is a branch of what is termed the right of *eminent domain,* which resides in the sovereign authority of a state, (which is here the people, who are the source of all political power,) and is exercised by them, through the instrumentality of the legislature, to whom, by the constitution, they have delegated it, and who must exercise it themselves, or through the agency of subordinate instrumentalities. The legislature has entrusted this power, so far as it relates to ordinary highways, to the select-men of towns, and to the county courts and county commissioners, respectively, and prescribed the mode in which it shall be exercised, by the statute which we are now considering. These bodies, therefore, in performing their duties on this subject, are only the agents of and represent the state, and exercise a portion of its right of eminent domain. This right existing in the state, or sovereign power, being unlimited in its extent, that portion of it, which is thus vested in the legislature, would also be unlimited, within its proper scope, and therefore might be exercised by the latter, and consequently, by the subordinate bodies to whom they had delegated it, in the establishment of a highway, without providing remuneration for any person sustaining damage of whatever kind thereby, were it not for the restriction imposed by the sovereign power on the legislature, by the constitution, which declares, that " the property of no person shall be taken for public use, without just compensa-

tion therefor."  *Const. of Conn. Art. I., Sect.* 11. (*a*)  Un-
der this restriction, in conformity to which the provision re-
specting damages, in the statute we are considering, was, in
our opinion, introduced, the legislature had no power, either
itself, or through the agency of others, to establish high-
ways, without providing compensation to those persons
whose property was thereby appropriated to the use of the
public.  Such appropriation would be a legal injury, because
it would be a violation of the rights of those persons, secured
to them by the constitution.  But the remote, indirect and
incidental damages sustained by the plaintiff in error, is not
within that restriction, since it was not, in any sense, a tak-
ing of his property, and therefore not an injury, or violation
of any of his rights.  He had no right to claim, that the le-
gislature should not exercise the full power of eminent do-
main on this subject, except as they were thus restricted;
much less that they should not resume that power, as they
did, in this case, by abridging, so far as the bridge on the
new road would have that effect, the use of the creek, which
itself was, to all intents, a natural public highway, and the
use of which, therefore, as such, the state, under the same
power of eminent domain, had a right to destroy altogether,
unless further impliedly restricted in the use of that power,
by the commercial power vested in Congress, with which
we have here no concern, for the reason before stated.  It is
certainly not consonant with reason to believe, that it was
the intention of the legislature to provide compensation to
persons, who had received no legal injury, or in other words,
none of whose rights had been violated.  Such remote, indi-
rect and consequential damages as those sustained by the
plaintiff in error, arising incidentally from the lawful exercise
of the sovereign power, as well as any similar benefit arising
from its exercise, may be, and usually are, in cases of the
purchase of property, anticipated and considered by the par-
ties, in the price to be given.

So far as the construction of the provisions, relied on in
the act before us, is aided by usage, a similar provision has

*Middlesex,*
July, 1851.
———
Clark
*v.*
Saybrook.

(*a*) Before the adoption of our state constitution, or even that of the *Uni-
ted States*, we had a statute, providing, that the damages sustained by any
persons, by the laying-out of a public highway, should be paid by the town
in whose bounds it should be laid out.  *Stat.* 96. ed. 1784.  R.

always been contained in our statutes in relation to highways; but the principle has never, to our knowledge, been claimed or adopted, that it embraced any other than immediate and direct damages.

We do not think that the claim of the plaintiff in error is strengthened by those cases which he has cited, where similar questions have arisen between individuals and canal, turnpike and rail-road companies. The question, in those cases, turned upon the construction of the particular provision of the act by which those companies were incorporated, and only involved the extent of the power granted to, and of the duty imposed on, them. They were controversies between individuals and those companies, claiming under special powers granted by their charters, and not, as in this case, between an individual and the state, whose powers, with the exceptions which have been mentioned, are unlimited. The phraseology, moreover, in those charters, is peculiar on this subject, and differs essentially from that contained in our general statutes providing for the laying-out of highways. In addition to this, the rules for construing such private grants and general laws, are widely different, as we had occasion to shew, in the recent case of *Bradley* v. *The New-York and New-Haven Rail-road Company, ante,* p. 294.

If, however, the plaintiff in error were correct in his claim, that, by the true construction of the statute, under which the damages were assessed, by the jury, in this case, incidental or consequential damages merely are a proper subject of compensation, we are of opinion, that it would not embrace the kind of damage, which it appears from the finding of the county court, on the remonstrance of the petitioners, that he had sustained. It is found, that he had no right to the use of the creek crossed by the new highway, except in common with the public generally; and it does not appear, that he would sustain any damage, except that, in consequence of the bridge across the creek, he would be deprived, to a certain extent, of the use of the creek for the transportation of stone from his quarry, and the produce of his land. In other words, he would, in consequence of the establishment of the contemplated highway, be incommoded only, in common with the public generally, in the use of another highway, which consisted of the creek, but would suffer no damage, which

would be special, or peculiar to himself. It is now too well settled to require argument, that such an inconvenience or obstruction, even if unauthorized and illegal, does not constitute an injury, for which an individual can maintain a private action, but that the legal remedy is at the suit of the public, by indictment or information for a public nuisance. *Bigelow* v. *Hartford Bridge Company*, 14 *Conn. R.* 566. *O'Brien* v. *Norwich and Worcester Rail-road Company*, 17 *Conn. R.* 372. For the reasons already stated, it is clear, that no such proceeding by the public, could be sustained in this case, as the statute which we have been considering would authorize the bridge, and therefore constitute a perfect justification for erecting it. The consequences of giving that statute a construction which would require compensation for such indefinite, remote and general damages, would be such, that it is impossible to believe, that they were within the intention of the legislature.

But we are, in the last place, of the opinion, that by the terms and true construction of that statute, the assessment of damages is to be confined to the owners of land through which the highway is laid out. The eleventh section provides, that the select-men of the respective towns, or the major part of them, may lay out such public highways as they shall judge needful, within their respective towns, first giving the notice therein prescribed, "to the owners of land through which the same are to be laid out, to be present, if they see cause, at the laying-out of such ways." It then provides by whom "the damage done to such person or persons, by laying out the same," shall be paid ; and that, "if the select-men and persons interested cannot agree as to the damages done, by the laying-out of such way, the select-men shall apply to a justice of the peace, who shall appoint three judicious, disinterested freeholders, who, being sworn for that purpose, shall estimate and assess to each person injured the damages sustained by him, in laying out said way." The remainder of the section merely prescribes the subsequent steps necessary to be taken for the establishment of the highway. Then follow the provisions of the twelfth section, which have been before recited, so far as they apply to this question. In regard to the meaning of these provisions, we have no doubt, in the first place, that the provision in the

*Middlesex*,
July, 1851.

Clark
*v.*
Saybrook.

eleventh section, which relates only to ways laid out by se-lectmen, that the freeholders " shall estimate and assess to each person injured the damages sustained by him in laying out such way," embraces, notwithstanding the generality of the expressions, those persons only to whom it was before, in the same section, declared, that " damage done by laying out the road," should be paid ; and those persons are clearly, by a reference to what precedes, " the owners of the land through which the highway is to be laid out," because, after requiring notice to such owners of land, it is provided only, that " the damage done to *such* person or persons, by laying out the road, shall be paid." We think it equally clear, in the next place, that the "individuals" mentioned in the twelfth section, which relates only to highways laid out by commissioners, to whom it provides, that the damages which will accrue, by laying out the road, shall be assessed, were intended to be the same description of persons as those con-templated in the subsequent clause, which provides, that " if any person shall complain of the assessment of damages, he may move for a jury to reassess the same ;" and that only such persons were meant to be embraced, in both of these provisions, as would be entitled to damages, if the road had been laid out by select-men, under the eleventh section.

These enactments are *in pari materia,* or, more correctly speaking, only parts of the same act ; and this is the only construction which will make them harmonize with each other, or carry into effect the manifest object of the legisla-ture in passing them. The jurisdiction given to the county court, the commissioners, and the jury, where select-men neg-lect or refuse to lay out a road, which is the case now be-fore us, is merely appellate, in its character. The design of the twelfth section of the statute, was only to furnish a rem-edy, by a review before a higher tribunal, where select-men neglect or refuse to perform their duty. It would therefore be most unreasonable to suppose, that the legislature intended to establish a different principle in the two tribunals, by which damages occasioned by the laying-out of a road, should be assessed. Although, therefore, the phraseology of the act is somewhat general and loose on this subject, we cannot adopt the construction insisted upon, by the plaintiff in error.

For these reasons, we are of opinion, that the superior court should be advised, that there is no error in the judgment complained of.

In this opinion the other Judges concurred.

Judgment affirmed.

