By the Court. Woodruff, J.
—Before considering the allegations which are claimed to charge upon the defendant conduct which ought to be restrained by injunction, or inquiring how far those allegations are met and overcome by the defendant, it will be useful to notice that there are but two persons who are parties to this action. The suit is prosecuted by the plaintiff, in no representative character known to the law. By reason of his having *650 received, from the author, “the advance sheets” of two of the works of Richard C. Trench, and his having put them in the hands of a stereotyper, and ordered plates thereof upon his own credit, (which plates have, under an alleged agreement with the defendant, come to the possession of the latter,) and for the further reason that the defendant refuses to be bound by the said agreement, the plaintiff demands that the defendant deliver to him the plates and the books printed therefrom; that he be enjoined from selling or disposing thereof; and that a receiver be appointed, pending the action.
The plaintiff, in this, does not profess to be prosecuting the action on the behalf of Richard C. Trench; his complaint is in his sole name, and for the protection of rights which he claims to have himself acquired.
If, upon the facts alleged, it appeared that Richard C. Trench had any interest in the controversy, the action is not, in respect of that interest, in a form which can be entertained. A mere agent cannot, in his own name, prosecute a suit for the protection of his principal, and he could not before the Code was enacted.
Viewed simply as a suit for the benefit of Trench, the action cannot be prosecuted by the plaintiff. He is not prosecuting it, and cannot prosecute it as next friend of Trench, nor under any supposed representative character.
What was heretofore the rule of Chancery practice, is now the rule by statutory enactment. Every action must be prosecuted in the name of the real party in interest.
And, finally, on this point the complaint does not show that Trench has any such interest in the matter in controversy as would sustain an order for an injunction and receiver on his behalf, if he were named as a party plaintiff; the allegations of the complaint remaining as they now are. The only intimation in the complaint that Trench has any concern in the matter is the statement “that said sheets were sent to this plaintiff, for the advantage of said Trench and of plaintiff.”
That statement is altogether too vague and indefinite to *651 be made the ground of the harsh and summary interference of the court, by an injunction and receiver. If. it might answer as a mere pleading to invite an issue and (if facts enough were proved) sustain a recovery, or put the defendant to a motion to make the complaint more definite, it comes far short of the 'requisites of an affidavit warranting a preliminary injunction, without which no such injunction can be properly granted. (Code, § 220 ; Fowler v. Burns, Ante, 637.) It- suggests no idea that irreparable mischief to the rights of Trench is likely to be done. It does not show what advantage to him was contemplated or expected from his sending the advance sheets' to the plaintiff; whether it was increased reputation or pecuniary profit is not stated; if it was the former, it is not shown that his reputation will not be as largely increased by the defendant’s issuing and sale of his works as it will be if the same is done by the plaintiff; and if pecuniary profit is expected, it is not shown how that is to arise, or that the plaintiff is by agreement or otherwise bound to make any return to him of profits or compensation in any form.
Without discussing, therefore, the question whether Trench had or has any interest in the advance sheets mentioned, which, being regarded as in substance an author’s manuscripts, a court of equity might protect, the claim to an injunction cannot be sustained by the allegations in the present complaint, upon his title to protection, because an agent cannot maintain the action on his behalf; if he could, the allegations do not show that he is in any such danger of injury as to require that protection; and the action does not purport to be brought on his behalf or for his benefit; if it did, it would be unavailing, because it should be prosecuted in his own name.
If a case for an injunction is made out, and the order can be sustained upon the plaintiff’s papers, it must be because they show that the plaintiff, Mr. Eedfield, has rights which the defendant has violated, orris about to violate, in such wise as to call for summary interference and protection.
*652 Assuming, for the purpose of examining the case' made by the plaintiff, that the affidavits which he was permitted to read on the motion at the special term were properly received, they contain no new or additional facts: they tend only to sustain the allegations in the complaint, which, in this part of our inquiry, may be assumed to be true. .
Treating the complaint as incorporated in and as forming part.of the plaintiff’s affidavit, annexed thereto, and to be in all respects true, upon what does the plaintiffs’ ■ title to an injunction rest ?
. He avers that in January, 1860, he and the defendant agreed that the defendant would enter into the business .of book publishing. He does not aver that this part of the agreement has not been performed by the defendant, or that he threatens or is about to discontinue that business.
He avers that he (the plaintiff) was to contribute to that business his contracts with authors, his knowledge of the business, his influence with authors, and with the trade and men of other business related to publishing, and the good-will of his former business. He does not state whether any or how much of this agreement he has performed on his own part. All that he states "he did in that respect is, at most, permitting the defendant to pay for and .receive from the stereotyper the plates of the works in controversy. '
He states that he (the plaintiff) was to give, in addition, his time and personal attendance to that business. There is no averment that he has performed this stipulation by devoting any time or attention thereto whatever. '
He alleges that, for the foregoing, the defendant was to pay to him a salary, to be subsequently agreed upon as to amount. He not only does not state that he rendered the service, but he does not state that ■ the amount has been agreed upon, or that he has offered his services, or that he has not been paid for his services, if any have been rendered entitling him to a salary.
He does aver that the defendant agreed that, on the first *653 of January, 1864, he would give to the plaintiff or to his appointee one-half of the business and of the stock and other properties appertaining thereto; and he does state that the defendant now refuses to be bound by his agreement. The whole averment showing such refusal will be presently noticed; but, in regard to the averment itself, it is obvious that the agreement stated is not to give to the plaintiff anything at present beyond the salary. It is not to give him any interest in or share of the profits of the business accruing before January 1st, 1864. It is at least doubtful whether the agreement, as’ stated, is not too indefinite and obscure to admit of any enforcement; or if it be not liable to that objection, then whether it means anything more than that the defendant will carry on the business of book publishing, using therein the aids which the plaintiff agreed to give to him for that purpose, and on the 1st of January, 1864, admit the plaintiff to a participation in that business, sharing with him the stock and property then invested therein. It would be difficult to say that the language imported anything more advantageous than this to the plaintiff, if it will bear even that construction. Still less can it be said that in the mean time the business was not to be carried on for the defendant’s exclusive profit.
Whatever be deemed the construction of this part of the agreement, it is clear that the plaintiff could claim nothing under it until January 1, 1864.
What, then, is the alleged breach of the defendant’s agreement ?
First. “ The defendant refuses to employ the plaintiff as aforesaid.” It has been already suggested that the plaintiff states no offer to serve him, or that he has rendered any~service; and if the agreement be such that the defendant is liable thereon to pay the plaintiff a salary, or what his services are reasonably worth, an action will lie therefor; and so far as the plaintiff’s claim is for services, or a refusal to employ, distinct from, and exclusive of, his title to ultimate participation in the business, it in no aspect *654 furnishes a ground for applying to a court of equity for relief peculiar to that jurisdiction.
Second, “ The defendant refuses to be lov,nd by the' said agreement, and to allow to him (the plaintiff) or to his appointee the said prospective interest in said business, and is now carrying on the same for his own exclusive profit; and alleges his right so to do.” The defendant is, then, carrying on the business which he agreed to carry on. He is in no fault in this respect. No right has yet been acquired by the plaintiff in that business or its profits. If the profits, meantime, are to be solely for the defendant’s benefit, then he is rightly carrying it on for his present profit exclusively; and if, on the first of January, 1864, the accumulations of the business are to be divided, it is then, and only then, that the plaintiff can call for them; and it will only be on a refusal, at or after that time, to make such a division, that the plaintiff can allege that the defendant has broken this clause of the agreement. All that is now true is,«at most, that the defendant states that when that time shall arrive he will not perform his agreement.
When that time comes the plaintiff, if his agreement be valid and sufficient, can enforce it. He can then compel a division, if he then be entitled to it. It would, we think,, be an extraordinary interference if the court now say to the defendant, you shall not carry on the business because you have declared that when your liability to account, and permit the plaintiff to share it, shall accrue, you will not perform your agreement.
This is not a case in which a defendant is about to do, or threatens to do, something in violation of the plaintiff’s rights which he ought to be restrained from doing. We are not asked to restrain him from refusing to divide with the plaintiff in 1864. When the plaintiff becomes entitled to that division, he may be entitled to a decree, compelling it. We do not see the. propriety of restraining the defendant from carrying on any part of that business merely because he has said that in 1864 he will .not perform his *655 agreement to divide. If bound as alleged, he will perhaps change his mind, and do voluntarily what he is bound to do ; if not, he can then be compelled to do it.
But the plaintiff states that the defendant is irresponsible ; and it is urged, therefore, that the plaintiff’s rights are in danger on that account. A defendant’s insolvency does unquestionably sometimes furnish a ground for equitable interference for a plaintiff's protection, but this complaint makes no case. The plaintiff’s allegations tend to show an arrangement for carrying, on a present business and for a future partnership — and the averment is that the defendant is irresponsible.
It is not stated that he is any .less responsible than he was when the agreement was made — it is not stated that even now he owes any debts. The arrangement seems to have contemplated the carrying on of an already established business, or making use of the good-will of such a business in the expectation of making it valuable to the plaintiff in 1864, and the defendant has entered upon and is carrying on the business, and there is no pretense that it is not just as wise and just as safe to permit him to continue it as it was when the arrangement was made.
This review of the alleged agreement and of the alleged breach thereof, (if breach it can be called,) shows', we think, that the allegations forming the general scope and purport of the plaintiff’s case furnish no sufficient ground for an injunction.
Do the allegations relating to the publication of the two works of Trench show that the plaintiff’s acts in.relation thereto justify an injunction or receiver ?
In the first place, if the plaintiff’s allegations be taken to be true and be construed most favorably to himself, the publication of those works will form a part of the very business the defendant agreed to carry on and which he is carrying on, and the observations already made, showing that he ought not to be prohibited carrying on that business, apply directly to this question; and it might, per *656 haps, bet sufficient to dispose of it on the grounds already • stated.
But there are on the face of the complaint other reasons why the defendant ought not to -be enjoined against publishing those works, or at least why the plaintiff has no title to such an injunction.
According to the statements in the complaint, the defendant, with the consent of the plaintiff, and in pursuance of the alleged agreement, has received the stereotype plates of the two works of Trench, and given his note therefor; has caused books to be printed therefrom and bound, and has them now in readiness, and is about to offer them for sale.
Now, irrespective of the plaintiff’s title to be' paid the salary which he alleges the defendant agreed to give him, it is not apparent that the plaintiff will be in any manner injured by permitting the defendant to go on and carry out the purpose for which he paid for the plates and caused the books to be printed and bound. If, tinder the alleged agreement, the plaintiff can at any time claim any benefit from the publication and sale of the books thus printed, he cannot until 1864. Until then the defendant was, by the agreement, entitled to use the plates and publish books and retain the proceeds.
And in this view, it is obvious the plaintiff does not strengthen his case by any agreement founded on Trench's supposed interest in such publication. If that interest is simply in the reputation he may gain thereby, then, as already suggested, it is not apparent that his reputation will not be promoted as well by a publication and sale of the works by the defendant as by the plaintiff. And if that interest is a supposed right to share the pecuniary profit derivable from the sale of the books, -then the plaintiff, according to his own showing, had bargained away to the defendant all that, profit, or had, in any view of the subject, postponed any claim to such profit until 1864. If in this he betrayed any confidence reposed in him by Trench, he cannot make his own violation of duty a reason *657 for invoking the interference of this court on Ms own behalf to prevent the defendant’s doing what it was intended he should do, and in order to do which he has paid for the plates, and has caused the books to be printed and bound.
The defendant having, with the assent of the plaintiff, invested his money or credit, or both, in- the books, we .think an injunction restraining his selling them, and an appointment of a receiver to take them from his hands, should not be granted, except upon a very clear case of danger to the plaintiff of some loss for which there will not be adequate redress in the ordinary modes of administering justice, or some fraud on the part of the defendant is shown.. No such danger, we think, appears by the plaintiff’s complaint, and no such fraud appears which is sufficient to require such summary interposition.
So that if all the facts alleged in the complaint are admitted, it is, to say the least, very doubtful whether the plaintiff has stated a case which will sustain an order for an injunction and receiver.
The only circumstances prominently presented by the affidavits read by the plaintiff in support of the case made by the plaintiff’s original affidavit, on wMch the order to show cause was granted, are the facts that the plaintiff procured the plates on his own credit; that he has offered to return the note given therefor by the defendant, and pay the expenses incurred in the paper, printing and binding the two works of Trench; and that the defendant has, sinde the complaint herein was sworn to, admitted that the plaintiff was to have an interest in the business after three years.
The arrangement which the plaintiff states he made in or about January, 1860, was that he was to contribute to the defendant’s business his contracts with authors, his knowledge of the business, his influence, and the good-will of his former business, and his own time and personal attendance; and yet, “in and about the months of January to June, 1860,” he received the advance sheets in question, *658 and instead of placing them in the hands of the defendant, to be published as a part of the business, the plaintiff himself, in his own name and on his own credit, proceeded to have them stereotyped, without naming the defendant in the matter.
The indication is that the plaintiff in this was not very prompt to perform the agreement on his part, or that the agreement had not then been made.
The offer made .to return the note and refund his disbursements on account of the works amounts to nothing, unless the plaintiff is upon other grounds entitled to restrain the defendant from publishing and selling the books.
And the defendant’s admission that the plaintiff was, by the arrangement, to have an interest in the business after three years, may be useful in establishing his right when the time to enjoy it arrives, but does not show that any present right has been violated. .
In this, to say the least, doubtful condition of the plaintiff’s case upon his own papers, we have the affidavit and .answer on the part of the defendant. He unequivocally denies that any such agreement as is stated by the plaintiff was ever made by him.
The existence, of the agreement is, of course, at the very foundation of the plaintiff’s claim, even if it is conceded that such agreement, and what is alleged as a breach, would entitle him to the injunction. But the answer and affidavit fully meet this averment.
The defendant admits that in the month of October, (in which month this action was commenced,) he and the plaintiff came to an agreement that the latter should be employed in the defendant’s business at a salary of $1,500 per annum, and avers that the plaintiff accepted such employment, but for a number of 'days prior to the commencement of this action, he has wholly neglected and refused to render any service whatever.
And in relation to the plates of the two books referred to, he says the plaintiff, before they. were completed, declared that the plates were for any one who would pay *659 for them; and that the defendant subsequently, in September, consented to take them, and give his note for the cost of the manufacture, and that the plaintiff and the stereotyper called together and delivered to him the bill therefor, and he gave his note; and the whole tenor of the- affidavit is that, as between the plaintiff and the defendant, the latter is the owner of the plhtes and of the books printed thereupon at his expense, and entitled to publish and sell the books; and the defendant further denies that he is irresponsible.
Without entering further into a comparison of the papers, and determining the case upon a nice consideration of the weight of the testimony, it may suffice to say that the case of the plaintiff is very far from being clear on the question of title to any claim, upon the facts shown. Still less is it apparent that the rights of the plaintiff are in any such immediate peril as calls for the interposition of this court by an injunction and receiver, which, obviously, may be highly prejudicial to the defendant, and the refusal of which cannot, as we perceive, be seriously, if at all, injurious to the plaintiff; and, so-far as appears, the plaintiff’s remedy, if the defendant has made the agreement in question, and should at the end of three or four years refuse to perform it, will be adequate, without an interference now, the tendency of which is to break up the very business in which the plaintiff claims a right to participate when the period shall arrive.
We do not wish so far to determine the merits on this'1 appeal as to say that the plaintiff may not, when the proofs are taken, establish a case which shall entitle him to recover back the stereotype plates and have an account of the profits which may accrue from publishing the books, but an injunction pendente lite should not be granted on light grounds nor in doubtful cases. We have often taken occasion to say that granting injunctions, where the right is not clear, or the danger great, or the apprehended mischief irreparable, is dangerous in a high degree. It often involves a determination disastrous to the party enjoined *660 on a mere motion, on which it is impossible that the proofs can be so taken and considered as to be a safe guide in the administration of justice. In all such cases the injunction should not be granted until the final hearing upon the full proofs, when the rights of the parties may be ascertained and settled.
For these reasons, the order enjoining the defendant and appointing a receiver should be reversed. The defendant’s costs of the motion at special term, fixed at $10, and the costs of the appeal to the same amount, to be part of his costs in the cause, and abide the event of his recovery of costs herein.