# N. Y. SUPERIOR COURT.

### THE MANHATTAN GASLIGHT COMPANY agt. JAMES BARKER.

An *individual citizen* cannot maintain an action to restrain another individual by injunction from an act alleged to be a *public nuisance* where he suffers injury only in common with other citizens.

Nor can such an action be sustained for the purpose of restraining the usurpation of a franchise detrimental to all the people of the state, to wit: the filling up of a navigable river or public highway.

It cannot be inferred from the mere fact of proximity that the owner of land adjoining a public highway or fronting on a river, which is a public highway, has some interest therein merely by reason of his proximity.

The doctrine is well setted that for a *public nuisance* the government alone can prosecute; and that those who do not suffer by a violation of law otherwise than as a member of the community cannot maintain a remedial action.

If a public nuisance work a private injury to a person, that person may have a remedy by private action for damages, and in a proper case, may have an injunction.

Where the answer in all respects is strictly responsive to the bill, because it positively, explicitly and circumstantially denies all its allegations, the rule is well settled that the court is bound to take all the allegations in the answer as true, and the motion for an injunction will be denied or dissolved if granted.

*Special Term, November,* 1868.

THIS is a motion on the part of the plaintiffs to restrain the defendant, the owner of a distillery in Eighteenth and Nineteenth streets, near the North river, from discharging his refuse mash into the common sewer, the waters of which carry said mash into the Hudson or North river, and as the plaintiffs allege, it there sinks to the bottom of the navigable stream, and is thereby a nuisance, and is injurious to navigation and especially injurious to them, the plaintiffs in this suit. They also allege that the corporation leased to them the right to collect wharfage on the front of the river where the sewer empties into the stream.

The defendant denies explicitly and circumstantially each and every allegation in the complaint; and alleges that, instead of the refuse of his distillery sinking and lessening the depth of water, it floats away with the current; and that

it is the debris of plaintiffs' large gasworks, and the coaltar therefrom, that is floating into the slip and is lessening the depth of the water, if it is lessened, and that it is not caused by any act of the defendant.

The defendant further alleges, that the plaintiffs own all the property around him (the defendant), and that they are also desirous of owning the property upon which his distillery is built, and that this effort on their part is not so much the interest they have in keeping the river deep, as it is an effort to get the defendant to sell his property to them; and that this suit is vexatious, and is designed to weary and annoy defendant, so as to make him part with his property, upon which his distillery is placed. This is a brief statement of the case.

McCUNN, J. *First.* The plaintiffs assert that certain injuries will result from the use by defendant of the sewer, as alleged by them.

*Second.* That it involves certain public wrongs or offences against the public, by reason of their being injured in certain privileges they have received from our municipal corporation; and they claim a right to maintain an action in equity, in their own names, to restrain the defendant from such usurpations, end to prevent and remedy such public wrongs, to wit: the maintaining of a public nuisance. The corporation has not leased to them any thing but the right to collect wharfage at their docks, fronting on this river, and the river being a public highway, and others being as much interested in the use of the same as plaintiffs are, notwithstanding the proximity of plaintiffs' property to the nuisance complained of; yet if this action can be maintained, innumerable others could, thereby leading to absolute confusion. The *jus publicum* or user of our great rivers or highways is in the people; and they, and they alone, are the trustees to guard and protect them. This is the English doctrine, as well as ours (1 *Hume's Eng.* 217). But the title to high-

ways in America is not involved in the mist of antiquity, and we have but little occasion to resort to the English books for a guide in this respect. Every state in the Union has adopted statutes expressly on this subject, and the acts of our own legislature are especially clear and explicit on this score; so that if an individual encroaches on the great rivers or highways of the nation, ample remedy can at once be applied in the name of the people, and by the competent law officer elected or appointed for that purpose; and it is not left to the whims and caprices, or the will of individuals, or special corporations, who may imagine themselves grieved, to apply a remedy. The relief prayed for by plaintiffs in this action must proceed upon the grounds, that the act imputed to the defendant is a public nuisance, or the usurpation of a franchise detrimental to all the people of the state, to wit: the filling up of a highway, as plaintiffs complain.

It is true it may not affect every citizen equally alike, but in judgment of law, assuming that no special injury is shown, they have the same right to complain. Now it will not be maintained for one moment that an action will lie by an individual citizen for such an offence. Such a course would confound all distinction between public and private rights, and would lead to great confusion. This was the doctrine held in the case of *Davies* agt. *The Mayor* (4 *Kern.* 506).

It is the undoubted rule of law that highways (and navigable rivers are great highways) belong to the sovereign power, and are part of its royalties or public rights; they belong to it absolutely, and there is no right in the adjacent owners of the soil (*Hoffman's Treaties*, 238). The portion of the river which plaintiffs complain that defendant is filling up therefore belongs to the people. It is theirs as a great public highway, absolutely under their control, and for their use, and they alone, and not the plaintiffs, can seek or maintain a remedy to prevent its being injured.

Aagain: An injunction should never be granted pending the action (*pendente lite*), on light grounds or in doubtful

cases. The universal rule is, where the right is not clear and transparent, and the danger great, or the apprehended mischief irreparable, it should not be granted until the rights of the parties are fully ascertained by a trial in open court, and with witnesses, and every opportunity allowed the parties against whom the remedy is sought to be enforced, to convince the mind of the court that the remedy should not be granted. This was held in this court to be the rule in the case of *Redfield* agt. *Middleton* ( 7 *Bosw.* 649). I am aware that this rule has been varied sometimes, where for instance a defendant is about to permit or do injury to real property, and where his claim thereto is doubtful, and where the injunction would only be of a transitory injury, and where compensation could be easily awarded, but that is not the case in this instance. Here the defendant's large business is entirely stopped, the machinery engaged in his distillery idle, and becoming seriously impaired the longer it remains in that condition. Under these circumstances, and in the exercise of sound discretion, I must adopt the greatest caution before I allow these plaintiffs to maintain their injunction, because, as I have said before, the granting and continuing of an injunction must always rest in the sound discretion of the court (*Wolerson* agt. *Anderson*, 2 *John. Ch.* 204).

The well established rule—that if the answer denies explicitly and positively the grounds on which the equity claim in the bill rests, the injunction to stay must be dissolved—must not be departed from—and I can see nothing whatever in this case to form the slightest exception to that rule. The answer to the defendant is directly responsive to the very gravamen of the complaint, and in the strongest manner denies its allegations *in toto*. He denies that the mash from his distillery in the slightest degree lessens the depth of water at the place complained of, or at any other place, and swears positively that the plaintiffs themselves, from their vast establishment for making gas, fill up with coaltar and other debris, the wharf or dock which is the subject matter in dis-

pute. Now the answer in all respects is strictly responsive to the bill, because it positively, explicitly and circumstantially denies all its allegations; and the rule is well settled, that we are bound to take all the allegations in the answer as true on the motion and at this stage of the proceedings.

It seems to me from the affidavits, and from an inspection of the premises, the right of this defendant to have a final judgment against these plaintiffs is entirely consonant with sound principles of equity; moreover, the theory " that if the answer denies all the equity of the bill, the injunction must be dissolved," is based upon the principle that the answer must be taken as true, but we must not carry this doctrine so far as to say that, as a matter of course, if the answer denies the equity of the bill the injunction must be dissolved. If the court can see sufficient reasons for maintaining the injunction, and that it entertains doubts about the truth of the allegations contained in the answer, and that irreparable injustice will be done if not granted, then, and in that case, notwithstanding the denials in the answer, it may, in its discretion, maintain the injunction. But such is not the case here. The doubts entertained in the mind of the court are doubts formed about the truth of the complaint and affidavits upon which this injunction is founded.

It cannot be inferred from the mere fact of proximity that the owner of land adjoining a public highway or fronting on a river, which is a public highway, has some interest therein, merely by reason of his proximity. This is an error which has been extensively indulged in. It was set at rest, however, by the court in the case of *Gould* agt. *The Hudson R. Railroad Co.* (2 *Seld.* 541). Now, I have shown that highways on land are strictly (legally) analogous to highways on water (21 *Conn.* 325; 11 *Barb.* 325). And no doctrine is more firmly settled than that for a public nuisance the government alone can prosecute; and that those who do not suffer by a violation of law otherwise than as a member of the community, cannot maintain any remedial action. To

sustain me in this view I could cite many authorities. One or two, however, will be sufficient: (*Clerk* agt. *Sayhook,* 21 *Conn.* 326; *Smith* agt. *Boston,* 7 *Cush.* 255; *Sutherland* agt. *Johnson,* 30 *Maine,* 466.)

If a public nuisance work a private injury to a person, that person may have a remedy by private action for damages, and in a proper case, may have an injunction. A noisome odor issuing from a public nuisance, such as issues from plaintiffs' gasworks, will have this effect, if it pervades the surrounding atmosphere, enters the adjacent dwellings, and either endangers the health or disturbs the comforts of those dwelling therein. A noise upon the public highway in like manner penetrates the dwellings and disturbs the inmates. I think these are the only instances in which a nuisance in the public highway can work a particular injury to a private individual merely in virtue of its proximity. The only other cases in which a private injury may result from a nuisance in highways, are those where the actual passage is thereby interfered with.

If for instance, by means of an obstruction in the public highway, a man is arrested in his progress over it and put to expense, this is a special damage, and an action will lie. This was the rule held by Chief Justice SHAW, in *Smith* agt. *Boston* (7 *Cush.*), but the case I have supposed, and that in 7 *Cushing* and the like cases, it will be seen are all cases of special damage, and arise in the common right of passage which belongs to every citizen; and the right of action in such cases is no less perfect because the plaintiff resides or his property is a great distance from the *locus in quo,* nor is it more imperfect because he happens to own the adjoining property. The gravamen of the action, its whole essence is, that he had a right of passage and was hindered from using it, and suffered special damage.

It is clear, therefore, that in case of a nuisance by destruction of a public highway, a private person can have no action but for actual injury received. In this case the proof would

not at this stage of the proceedings, warrant me in holding that the plaintiffs can make out even a *prima facie* case of personal injury or damage. Until very recently no one doubted the doctrine—and in this court, and in all the districts of the supreme court of our state, excepting the first, it is so still—that no private action can be maintained by an individual for a public offence, or any wrong against the state. Public nuisances are subject to indictment, and in aid of the courts of law, equity at the suit of the government will step in; but that the contrary doctrine has been sanctioned in high places, it might be treated with levity. But even as it stands now in our first judicial district, I believe the adjudications are evenly balanced for and against the rule. It must follow, therefore, from all that I have said, that upon the plaintiffs' own showing they cannot, as a matter of law, maintain this injunction. But in addition to the law being against their right to maintain this injunction, we have the facts running counter to their views, and that in the most decisive terms.

The defendant, in his answer, positively denies every allegation in the complaint, and in addition to his answer, he shows by himself and six other witnesses, that he is not the cause of lessening the water in the river; on the contrary, he shows that the plaintiffs themselves are lessening the depth of the water, if it is lessened at all. And these affidavits on the part of the defendant are only met by the complaint of the plaintiffs and two witnesses, neither of whom are as clear in their statements as the witnesses for the defense; so that, upon the facts as presented to me, I am constrained to deny this motion.