## Town of North Haven *v.* Planning and Zoning Commission of the Town of Hamden et al. (14234)

Peters, C. J., Shea, Glass, Covello and Borden, Js.

Argued September 25—decision released December 10, 1991

*Steven R. Rolnick,* for the appellants (named defendant et al.).

*Bourke G. Spellacy,* with whom were *Karen P. Blado* and, on the brief, *Alyce L. Raboy,* for the appellants (defendant Homart Development Company et al.).

*Robert K. Ciulla,* with whom was *Charles R. Andres,* for the appellee (plaintiff).

BORDEN, J. The dispositive issue of this appeal is whether proposed amendments to the Hamden zoning regulations considered by the named defendant, the Hamden planning and zoning commission (commission), "concern[ed] [a] project" within the meaning of General Statutes § 8-3h[1] so that the commission was required to give the plaintiff, the adjoining town of North Haven, notice of the proposed amendments pur-

[1] General Statutes § 8-3h provides: "NOTICE TO ADJOINING MUNICIPALITIES. The zoning commission of any municipality shall notify the clerk of any adjoining municipality of the pendency of any application, petition, request or plan *concerning any project on any site* in which: (1) Any portion of the property affected by a decision of such zoning commission is within five hundred feet of the boundary of the adjoining municipality; (2) a significant portion of the traffic to the completed project on the site will use streets within the adjoining municipality to enter or exit the site; (3) a significant portion of the sewer or water drainage from the project on the site will flow through and significantly impact the drainage or sewerage system within the adjoining municipality; or (4) water runoff from the improved site will impact streets or other municipal or private property within the adjoining municipality. Such notice shall be made by certified mail, return receipt requested, and shall be mailed within seven days of the date of receipt of the application, petition, request or plan. No hearing may be conducted on any application, petition, request or plan unless the adjoining municipality has received the notice required under this section. Such adjoining municipality may, through a representative, appear and be heard at any hearing on any such application, petition, request or plan." (Emphasis added.)

The trial court also concluded that the defendants had not complied with General Statutes § 8-26f. The language of § 8-26f is identical to § 8-3h except that § 8-26f applies to a town's planning commission. See General Statutes § 8-26f. Therefore, our holding in this case also applies to § 8-26f.

suant to that statute. The defendants[2] appeal[3] from the judgment of the trial court sustaining the plaintiff's zoning appeal that challenged the decision of the commission. We reverse the judgment.

The relevant facts are as follows. In July, 1988, Pellegrino, Homart and Fusco/Gottlieb filed an application with the commission to amend the Hamden zoning regulations for all fifteen Business B-2 and CDD-1 districts located in Hamden.[4] The application sought five amendments[5] that are pertinent here: (1) an increase in the permissible gross floor area of a shopping center from 250,000 square feet to 784,000 square feet; (2) the exclusion of enclosed interior walkways from the definition of gross floor area; (3) the aggregation of lots within a shopping center for certain area, yard and frontage requirements; (4) the fulfilling of nonresidential front landscaping requirements by substituting such landscaping in other locations; and (5) the exclusion of underground or covered parking spaces from the computation of the required landscaping area and the number of trees. The stated purpose of these proposed amendments was to "permit existing zoning regulations to be more compatible with the development of a Shopping Center."

[2] The defendants in this appeal are the commission, Bernard A. Pellegrino, Homart Development Company (Homart), and Fusco/Gottlieb Associates (Fusco/Gottlieb). Homart and Fusco/Gottlieb filed an application with the commission for the amendments to the zoning regulations. Also named as defendants in the trial court were the Hamden town clerk, and the chairman and clerk of the commission, who are not involved in this appeal. We refer herein to the defendants Pellegrino, Homart and Fusco/Gottlieb as the applicants.

[3] The Appellate Court granted certification to appeal from the judgment of the trial court and we transferred the appeal to this court pursuant to Practice Book § 4023.

[4] A Business B-2 district is a business district, and a CDD-1 district is a controlled development district. Hamden Zoning Regs. § 301.

[5] All five amendments were adopted by the commission. A sixth amendment to the regulations was rejected by the commission and is not involved in this appeal.

The application, however, did not seek approval for any particular mall or refer to any particular site, nor did it include any site plans or traffic or drainage information. The application did not seek a change of zone with respect to any specific parcel or parcels of property. The Hamden zoning regulations require a special permit for the construction of a mall or shopping center. Hamden Zoning Regs. § 512.3. The commission referred the application to its planning section, which, after a meeting, recommended approval of the five amendments.

It is undisputed, however, that the commission was aware that the applicants sought the amendments to enable them to develop a commercial shopping mall, known as Hamden Court, on a thirty-three acre site located at the corner of Dixwell Avenue and Skiff Street (site). The town planner, who acted as the clerk of the commission, knew that these amendments were necessary before the applicants could obtain a special permit for the mall they intended to propose later. At the meeting of the planning section referred to above, Pellegrino had stated that the owners wanted to demolish the existing buildings on the site and construct Hamden Court. In a letter dated September 29, 1988, to the residents of Hamden, Homart had stated, inter alia, that it was "proposing to build Hamden Court Shopping Center at the intersection of Dixwell Avenue and Skiff Street," and that "[i]n order to develop Hamden Court as proposed by Homart Development Co. and Fusco/Gottlieb Associates, zoning ordinance changes are essential." Furthermore, in 1987, Homart had filed an application for certain other amendments to the zoning regulations in order to permit it to build a larger mall on the site. The commission had denied that application.

Following the receipt of the recommendation of the planning section, the commission held public hearings

regarding the application on November 10, December 1, and December 8, 1988. At no time either before the hearings or during the proceedings did the commission provide written notice of this application to the town clerk of North Haven. At a special meeting of the commission on January 5, 1989, the commission voted three to two to adopt the five amendments to the zoning regulations.

The plaintiff appealed to the Superior Court.[6] The court preliminarily found that the plaintiff was classically aggrieved and, therefore, had standing to raise noncompliance with § 8-3h as an issue. The court next concluded that § 8-3h applied in this case because the proposed amendments "concerned a project," namely, the Hamden Court mall, and because a significant portion of the traffic to and from the mall would use the plaintiff's streets. Therefore, the court concluded, the plaintiff was entitled to notice pursuant to § 8-3h. Finally, the court concluded that the failure of the commission to give such notice to the plaintiff deprived the commission of subject matter jurisdiction and, therefore, rendered the commission's action void.

The defendants claim that: (1) the proposed amendments did not concern a project within the meaning of § 8-3h and, therefore, the commission was not required to give notice to the plaintiff; (2) § 8-3h does not apply in this case because the traffic created by the Hamden Court mall will not use the plaintiff's streets to enter and exit the site; (3) the court relied on evidence outside the record; (4) the court erroneously placed the burden of proof on the defendants; (5) the plaintiff had actual notice of the hearing and, therefore, waived its right to statutory notice; (6) § 8-3h notice is not a prerequisite for subject matter jurisdic-

---

[6] This case was tried and argued on appeal simultaneously with *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 600 A.2d 757 (1991).

tion;[7] and (7) the plaintiff is not aggrieved by the proposed amendments and, therefore, does not have standing to raise noncompliance with § 8-3h. We agree with the defendants' first claim and, therefore, reverse the judgment.[8]

The defendants' first claim is that the trial court improperly interpreted § 8-3h when it concluded that the statute applied to the proposed amendments that were before the commission. The defendants argue that § 8-3h should be interpreted as requiring notice to be given to an adjoining municipality only when an application, petition, request or plan proposes on its face a specific project, rather than when it proposes general amendments to zoning regulations that are not confined to one specific site or project. The plaintiff argues, however, that § 8-3h does apply to general zoning amendments and that, in this case, the proposed amendments concerned a project within the meaning of § 8-3h. We agree with the defendants.

Construction of a statute is a question of law for the court. *Lees* v. *Middlesex Ins. Co.*, 219 Conn. 644, 650, 594 A.2d 952 (1991). " 'We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. *State* v. *Kozlowski*, 199 Conn. 667, 673, 509 A.2d 20 (1986); *Hayes* v. *Smith*, 194 Conn. 52, 57, 480 A.2d 425 (1984). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to

---

[7] We have recently held that the notice required by General Statutes § 8-3h is not a prerequisite for a zoning commission's subject matter jurisdiction. See *Lauer* v. *Zoning Commission*, 220 Conn. 455, 460, 600 A.2d 310 (1991).

[8] Since we conclude that the proposed amendments did not concern a project within the meaning of General Statutes § 8-3h, we need not consider the defendants' other claims.

implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 572, 522 A.2d 763 (1987) . . . .' " *Lauer* v. *Zoning Commission,* 220 Conn. 455, 459–60, 600 A.2d 310 (1991); *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services,* 202 Conn. 583, 589, 522 A.2d 771 (1987).

We first examine the language of § 8-3h. The statute requires, in pertinent part, that a zoning commission "notify the clerk of any adjoining municipality of the pendency of any application, petition, request or plan *concerning any project* on any site in which . . . (2) a significant portion of the traffic to the completed project on the site will use streets within the adjoining municipality to enter or exit the site . . . ." (Emphasis added.) Section 8-3h specifically refers to applications concerning a "project." Since our zoning statutes do not define the word "project," we must give the word its plain and ordinary meaning. *Bolt Technology Corporation* v. *Commissioner of Revenue Services,* 213 Conn. 220, 228, 567 A.2d 371 (1989); *Carlson* v. *Kozlowski,* 172 Conn. 263, 266, 374 A.2d 207 (1977). When a statute does not define a term, "it is appropriate to look to the common understanding expressed in the law and in dictionaries." *Bolt Technology Corporation* v. *Commissioner of Revenue Services,* supra.

Webster's Third New International Dictionary defines the word "project" as a "specific plan or design." Other sections of the General Statutes similarly define "project" in relation to a particular building, structure or facility.[9] The proposed amendments

[9] See, e.g., General Statutes § 8-39 (i) (" 'Housing project' means *any work or undertaking* . . . (2) to provide decent, safe and sanitary urban or rural *dwellings* . . . .") (emphasis added); General Statutes § 8-119e (b) (" 'Congregate housing project' means the planning of the buildings and improvements . . . *the construction* . . . *of the improvements* or all other work

in this case are, on their face, project-neutral. They do not apply to one specific site. Instead, they apply to all fifteen Business B-2 and CDD-1 districts in Hamden. Further, the proposed amendments, on their face, do not contain any reference to a specific plan or design. The application contained no site plan, traffic studies or blueprints for any particular site or structure, and only proposed certain general dimensional amendments for certain zoning districts. In light of the plain meaning of the statute, we conclude that the legislature intended § 8-3h notice to be given only when the application, petition, request or plan submitted to the commission relates, on its face, to a specific project, and did not intend such notice to apply to a case like this, in which the application on its face proposes zoning regulation amendments that are of general applicability.[10]

This conclusion is bolstered by an examination of the legislative history of § 8-3h. Section 8-3h was enacted

performed in connection with a congregate housing program.") (emphasis added); General Statutes § 10-282 (c) (" 'School building project' . . . means (1) the *construction* . . . *of a building* . . . and (4) the lease of *a facility* . . . .") (emphasis added); General Statutes § 10-289 (" 'school building project' means (1) the *construction* . . . *of a building* to be used for public school purposes . . . .") (emphasis added); General Statutes § 13a-175p (3) (" 'Eligible bridge project' means the removal, replacement, reconstruction, rehabilitation or *improvement of an eligible bridge* . . . .") (emphasis added).

[10] The plaintiff claims that a discerning observer would have understood that the application concerned a project because the applicants responded "Yes" to the question, on the application form, "Any previous petition for the same location?" This response, however, did not necessarily refer to the prior special permit application to build the Hamden Court mall, but referred to the applicant's prior proposal in 1987 to amend the Business B-2 and CDD-1 zones in Hamden. Therefore, this response was correct because the "same location" was the Business B-2 and CDD-1 zones and not the site of the contemplated Hamden Court mall. Furthermore, under the heading, "Property Owners of Subject Change," on the application, was the legend, "N/A." Also, the stated purpose of the application was: "To permit existing zoning regulations to be more compatible with the development of a Shopping Center." Thus, we reject the plaintiff's argument that the application on its face referred to a specific project.

after a dispute between the town of West Hartford and the town of Bloomfield over a specific development project. Without giving notice to the adjoining town of West Hartford, Bloomfield's planning and zoning commission had approved a site-specific subdivision project, known as the Cordon Drive development, that had a significant drainage impact on the adjoining town of West Hartford.[11] See 30 H.R. Proc., Pt. 16, 1987 Sess., p. 6026, remarks of Representative Richard Blumenthal. Thus, the legislative origin of § 8-3h was a dispute over a specific project, not a proposal for amendments to municipal regulations of general applicability.

Furthermore, every example given by the members of the General Assembly who discussed the application of § 8-3h pertained to a specific construction project and not to general amendments to zoning regulations. For example, Representative Miles S. Rapoport noted that "[t]he bill simply requires that *in a development project* that is close enough to a neighboring town . . . the neighboring town, will be notified . . . ." (Emphasis added.) 30 H.R. Proc., Pt. 16, 1987 Sess., p. 6031, remarks of Representative Miles S. Rapoport. Senator Kevin B. Sullivan remarked that § 8-3h would apply when there are "impacts . . . from *a commercial business type of development* or from *a very large subdivision* . . . ." (Emphasis added.) Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 3, 1987 Sess., p. 689, remarks of Senator Kevin B. Sul-

---

[11] Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 3, 1987 Sess., p. 721, remarks of the mayor of West Hartford, Christopher F. Droney. Although we ordinarily review a statute's legislative history in light of discussions conducted on the floor of the Senate or House of Representatives, we have also considered discussions before joint standing committees when discerning legislative intent. See *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission,* 219 Conn. 685, 695 n.10, 595 A.2d 313 (1991); *State* v. *Magnano,* 204 Conn. 259, 273–74 n.8, 528 A.2d 760 (1987).

livan. Senator Sullivan also discussed the applicability of § 8-3h to a situation in which "[t]hree office buildings were to be added to the West Farms Mall." Id., p. 694. Representative Naomi K. Cohen discussed a number of specific projects that may trigger § 8-3h, stating that: "It is very interesting . . . and by no means is this a complete list . . . but, there is a project called Covers Commons in East Windsor and Enfield which would have been [a]ffected by this language. In Southington and Cheshire, there is the Appleberry Mall. . . . [I]n Marion and Wallingford, there is the Midway Business Park . . . in Orange and Derby, there is a shopping center." Id., p. 701, remarks of Representative Naomi K. Cohen. None of these comments discussed the applicability of § 8-3h in the context of general zoning amendments. They suggest, on the contrary, that § 8-3h notice is required only when an actual development proposal is before a zoning commission.

The plaintiff contends, however, that § 8-3h should be given a broader interpretation. It argues that general amendments to zoning regulations may, in some cases, concern a project and that in this case they do because the proposed amendments were designed for the construction of the Hamden Court mall to be located on a specific site. In support of its position, the plaintiff notes that the legislature included the use of a "petition," as well as an "application," "request" or "plan" as a medium for triggering the notice requirement of § 8-3h. See footnote 1, supra. The plaintiff argues that the legislature uses the word "petition" when referring to proposals to amend zoning regulations, but uses the word "application" when referring to proposals for special permits, special exceptions and variances. Therefore, the plaintiff claims, by specifically including the word "petition" in § 8-3h, the legislature intended that proposed general amendments to zoning regulations would be covered by § 8-3h where those

amendments are in fact aimed at or motivated by a specific project. We are not persuaded by this argument.

Statutory words should be interpreted in the context in which they appear. *Nichols* v. *Warren,* 209 Conn. 191, 197, 550 A.2d 309 (1988). The use of the word "petition," when viewed in the context of the entire section, does not support the conclusion that § 8-3h was meant to apply to an application, petition, request or plan for general amendments to zoning regulations that is not, on its face, confined to a specific project. Section 8-3h requires notice when an "application, petition, request or plan concern[s] any *project* on any site . . . ." (Emphasis added.) The word "project" is used in the same subsection with the word "petition." A project is ordinarily proposed by a site-specific or structure-specific request, such as a request for a special permit, variance or special exception, and not by general zoning amendments.[12] When such a proposal is considered, a commission ordinarily would have access to the kind of information on which § 8-3h focuses. For example, a special permit application in Hamden must include a map of the property, signed by an engineer or architect, illustrating the existing and proposed developments on the property. The map must include the location of all existing and proposed buildings and the location of all entrances to and exits from the property. See Hamden Zoning Regs. §§ 820 through 843.8.[13]

---

[12] We need not decide at this time whether a request for a zone change regarding a specific site or sites would be covered by General Statutes § 8-3h.

[13] The plaintiff claims that at the special permit stage the commission would have no discretion to deny the special permit application if it conforms to the Hamden regulations. This claim has no merit under the circumstances of this case. Sections 512.3 and 572.2 of the Hamden zoning regulations require, in Business B-2 and CDD-1 districts respectively, special permits for shopping centers and stores containing more than 20,000 square feet of floor area. Moreover, § 826 of the regulations provides that, in passing on a special permit application, the commission "shall give con-

Furthermore, contrary to the plaintiff's position, when referring to proposals to amend zoning regulations the legislature does not use the word "petition" exclusively. It is true that General Statutes § 8-3 (c)[14] refers to changing a zoning regulation by means of a petition. Section 8-3 (d), however, provides that if notice of that zoning change is not published by the commission, the *"applicant or petitioner"* may provide such notice. (Emphasis added.)[15] Because, in the context of zoning regulations, the legislature has used the words "petition" and "application" interchangeably, we conclude that it did so in enacting § 8-3h.[16]

Furthermore, § 8-3h requires a commission, within seven days of receipt of an application, petition, request or plan concerning a project, to make certain detailed factual determinations regarding the specific location

sideration to, but not be limited by" such factors as: the health, welfare and safety of the public and the immediate neighborhood; compliance with the town's plan of development; the location, size, nature and intensity of the project; *the safety and intensity of traffic generated by the project;* the scale of the proposed structure; the harmony of the site design with the general area and adjacent properties; and compliance with the zoning regulations. Furthermore, § 827 gives the commission the power to impose "reasonable conditions and safeguards related to the factors set forth in Section 826." Under these circumstances, the commission has wide discretion to deny a special permit application.

[14] General Statutes § 8-3 (c) states in pertinent part: "All *petitions requesting a change in the regulations* . . . shall be submitted in writing and in a form prescribed by the commission and shall be considered at a public hearing within the period of time permitted under section 8-7d." (Emphasis added.)

[15] General Statutes § 8-3 (d) states in pertinent part: "Zoning regulations . . . or changes therein shall become effective at such time as is fixed by the zoning commission, provided . . . notice of the decision of such commission shall have been published in a newspaper . . . . In any case in which such notice is not published . . . any *applicant or petitioner* may provide for the publication of such notice within ten days thereafter." (Emphasis added.)

[16] Indeed, the form supplied to the applicant by the Hamden zoning commission for the proposed amendment in this case uses both the term "application" and the term "petition."

of a project, and regarding the traffic, drainage and water runoff resulting therefrom. When a commission receives a proposal for general amendments to the zoning regulations that, on its face, is not confined to any one project, those factual determinations would be very difficult to make, especially within the required seven day period, because such a proposal would not ordinarily include site specific information. The plaintiff's interpretation of § 8-3h would require the commission to look behind the face of the application and inquire into the motives of the applicants in submitting the proposed zoning amendments. We recognize that in this case the applicants, like most private applicants, were motivated by their own economic interests, namely, to build the Hamden Court mall if the proposed amendments were adopted. We do not believe, however, that § 8-3h requires a commission to look behind facially project-neutral proposed zoning regulation amendments in order to discern the specific facts regarding the underlying project that motivated the applicants. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 547, 600 A.2d 757 (1991) (motivation of applicant should not limit scope of zoning commission's consideration of application more narrowly than appropriate under General Statutes § 8-2); *Caserta* v. *Zoning Board of Appeals,* 219 Conn. 352, 361–62, 593 A.2d 118 (1991) (motive of applicant irrelevant to jurisdiction of administrative agency).

The judgment is reversed and the case is remanded with direction to render judgment dismissing the plaintiff's appeal.

In this opinion the other justices concurred.