## WELLSWOOD COLUMBIA, LLC, ET AL. *v.* TOWN OF HEBRON ET AL.
### (SC 18284)

Rogers, C. J., and Norcott, Palmer, Vertefeuille, Zarella and McLachlan, Js.

supra, § 6.6 (a), pp. 459–66 (citing cases demonstrating many situations where entry for emergency aid is reasonable).

Argued January 11—officially released April 27, 2010

*Mark K. Branse*, with whom was *Brendan Schain*, for the appellants (plaintiffs).

*Michael A. Zizka*, with whom was *Kari L. Olson*, for the appellees (defendants).

*Timothy S. Hollister* and *Ryan K. McKain* filed a brief for the National Association of Home Builders as amicus curiae.

*Opinion*

ROGERS, C. J. The narrow question presented in this appeal is whether a town may close a town road that provides the sole existing access to a property in an adjoining town in order to prevent traffic from a proposed subdivision on the property from overburdening the road. The planning and zoning commission of the town of Columbia granted the application of the plaintiffs, Wellswood Columbia, LLC (Wellswood), and Ronald Jacques, the managing member of Wellswood, to subdivide certain property (property) that Wellswood owned in the town of Columbia.[1] Thereafter, the defen-

---

[1] We refer to Wellswood and Jacques collectively as the plaintiffs and individually by name where necessary.

dants, the town of Hebron, the town's board of selectmen and Jared Clark,[2] the town manager, closed Wellswood Road in Hebron, which provided the sole currently existing access to the property. The plaintiffs then brought this action seeking a temporary and permanent injunction barring the defendants from closing Wellswood Road. After a trial to the court, the trial court denied the request for a permanent injunction and rendered judgment in favor of the defendants. The plaintiffs then appealed[3] claiming for a variety of reasons that the trial court improperly had denied their request for a permanent injunction. We conclude that the defendants lacked the power to close Wellswood Road under the circumstances in the present case. Accordingly, we conclude that the action of the defendants was void ab initio and reverse the judgment of the trial court.

The trial court found the following facts.[4] In early 2004, the plaintiffs were considering the purchase of the property, which consisted of approximately 188 acres of land in the town of Columbia, for purposes of constructing a six phase residential retirement community. The only currently existing access to the property is Wellswood Road in Hebron, which runs from Route 66 to the town line between Hebron and Columbia. At that point, Wellswood Road becomes Zola Road, which continues into the property and terminates in a dead

---

[2] The plaintiffs initially named Paul Mazzaccaro, who was then the Hebron town manager, as a defendant. The trial court subsequently granted the plaintiffs' motion to substitute Clark as a defendant. We refer to the town of Hebron, its board of selectmen, and Clark collectively as the defendants and individually by name where necessary.

[3] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] Our recitation of facts includes several undisputed facts that were not expressly found by the trial court.

end.[5] Several single-family homes, a small development and an apartment complex are located along Wellswood Road in Hebron. Zola Road is unimproved and the abutting land in Columbia is undeveloped.

Because the only access to the property was by way of Wellswood Road, the plaintiffs requested a meeting with Hebron town officials to discuss the proposed development. During a meeting on April 21, 2004, Hebron town officials expressed several concerns about the proposed development, including concerns about storm water runoff from Wellswood Road, the adequacy of the water supply and the feasibility of septic services. The parties also discussed whether access to the property would be through private or public roads. The Hebron town officials indicated that, because the sole access to the development, at least initially, would be Wellswood Road, the development did not comply with that town's subdivision regulations.

After several additional meetings with the Hebron town officials to discuss the development, Wellswood purchased the property in August, 2004, and decided to go forward with its development plans despite knowing of the defendants' concerns. In October, 2004, the plaintiffs began the subdivision approval process in Columbia. On December 9, 2004, Paul Mazzaccaro, then

---

[5] The trial court found that it was not clear from the evidence presented at trial whether the property abuts the town line between Hebron and Columbia. The plaintiffs dispute this finding and claim that the evidence established that the property abuts Wellswood Road where it meets the town line. James Dutton, the plaintiffs' engineer and property surveyor, testified that the property abuts Wellswood Road, as shown in a subdivision plan prepared by Dutton. On cross-examination, Dutton testified that, as a surveyor, he was not required to determine the location of the town line and that the plans were not intended to certify the location of the town line. He testified, however, that the property "goes to the town line." He further testified that he had researched the deeds for all properties abutting the property and saw no evidence that any of those properties crossed town lines.

the town manager for Hebron, sent a letter to the Columbia planning and zoning commission in which he raised several concerns regarding the proposed development. Mazzaccaro stated that, as depicted in the plans that the plaintiffs had submitted, the proposed development "never could have access to other . . . development [in Columbia] or be connected to the present Columbia street system." He requested that future plans provide for such connection. Thereafter, the plaintiffs met separately with officials of both towns and it was determined that Mazzaccaro's letter had been based on outdated plans. Later subdivision plans showed several proposed new streets running from Zola Road to the property line. None of these streets, however, connected with existing roads in Columbia.[6]

Over the next several months, the plaintiffs continued the subdivision approval process in Columbia. On September 13, 2005, the Columbia planning and zoning commission conducted a public hearing on the proposed subdivision. Several town officials from Hebron attended the hearing and voiced concerns over the remote location of the subdivision, the difficulty of responding to emergencies at that location, the effect of additional traffic on the safety of Wellswood Road and the increased cost to Hebron of maintaining the road and providing emergency services.

On October 6, 2005, the Hebron planning and zoning commission held a special meeting and recommended closing and barricading Wellswood Road at the town line. The Hebron board of selectmen adopted the recommendation that night. Thereafter, the plaintiffs brought this action seeking a temporary and permanent injunction to prevent the defendants from closing Wellswood Road. After the plaintiffs filed the action, the

---

[6] The property is surrounded by properties owned by others and does not abut any street within the town of Columbia.

town of Hebron posted a "road closed" sign at the end of Wellswood Road. The defendants then filed a motion to dismiss the action for lack of subject matter jurisdiction, claiming, inter alia, that the plaintiffs lacked standing, which the trial court, *Peck, J.*, denied.

In April, 2006, the town of Columbia approved the plaintiffs' subdivision application.[7] The parties subsequently entered into a stipulation for a temporary injunction pursuant to which the town of Hebron was enjoined from obstructing the plaintiffs' use of Wellswood Road for access to their property pending resolution of the action. Thereafter, the action was tried to the court, *Hon. Lawrence C. Klaczak*, judge trial referee, which rendered judgment for the defendants.[8] This appeal followed.[9]

The plaintiffs contend that the trial court, *Hon. Lawrence C. Klaczak*, judge trial referee, improperly denied their request for a permanent injunction barring the defendants from closing Wellswood Road because: (1) barring the road was an unreasonable and arbitrary exercise of police power; (2) equitable relief is an appropriate remedy for the destruction of access even with-

---

[7] The plaintiffs claim that their subdivision application was approved by vote of the Columbia planning and zoning commission on December 27, 2005, and that the subdivision map was "endorsed" in April, 2006. The plaintiffs filed a motion for articulation in which they requested that the trial court correct this finding and contended that the date was "important because the approvals predated the posting of Wellswood Road as 'closed' on January 30, 2006." In its articulation, the trial court stated, "the final subdivision plans were endorsed by the town of Columbia in April, 2006, and the court deems that April date to be correct." Because the specific date that the Columbia planning and zoning commission approved the plaintiffs' subdivision application is irrelevant to our resolution of this appeal, and because this court does not find facts, we decline to resolve this factual dispute.

[8] After the trial court rendered judgment, the plaintiffs filed a motion for articulation, which the trial court granted in part and denied in part.

[9] After this appeal was filed, this court granted the motion of the National Association of Home Builders to appear as amicus curiae.

out a showing of irreparable harm; (3) even if a showing of irreparable harm is required, the plaintiffs were irreparably harmed by the road closure because there is no other access to the property; (4) the road closure was inconsistent with the public policy underlying General Statutes § 13a-55;[10] and (4) contrary to the trial court's finding, the plaintiffs cannot use the property for purposes other than the subdivision if the road is closed. The defendants dispute these claims and claim as an alternate ground for affirmance that the plaintiffs lacked standing to bring this action. We conclude that the plaintiffs had standing to bring this action and that the trial court, *Hon. Lawrence C. Klaczak*, judge trial referee, improperly determined that the defendants had the police power to close Wellswood Road. Accordingly, we reverse the judgment of the trial court.

We first address the defendants' claim that the trial court, *Peck, J.*, improperly concluded that the plaintiffs had standing to bring this action. We disagree. "The issue of standing implicates this court's subject matter jurisdiction. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing

---

[10] General Statutes § 13a-55 provides: "Property owners bounding a discontinued or abandoned highway, or a highway any portion of which has been discontinued or abandoned, shall have a right-of-way for all purposes for which a public highway may be now or hereafter used over such discontinued or abandoned highway to the nearest or most accessible highway, provided such right-of-way has not been acquired in conjunction with a limited access highway."

by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring an action, in other words statutorily aggrieved, or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 369–70, 880 A.2d 138 (2005).

In support of their claim that the plaintiffs in the present case lacked standing to bring this action, the defendants rely on this court's decision in *Clark* v. *Saybrook*, 21 Conn. 313 (1851). In that case, as described in the facts preceding the opinion, the town of Saybrook planned to build a bridge over a certain creek. Id., 314. The plaintiff quarry owner, who claimed that the bridge interfered with his use of the creek to transport stone and hay to market, brought an action for damages pursuant to a statute that authorized towns to compensate persons for the taking of their property for the construction of highways and bridges. Id., 314, 322. This court concluded that the plaintiff "had no right to the use of the creek crossed by the new highway, except in common with the public generally; and it does not appear,

that he would sustain any damage, except that, in consequence of the bridge across the creek, he would be deprived, to a certain extent, of the use of the creek for the transportation of stone from his quarry, and the produce of his land. In other words, he would, in consequence of the establishment of the contemplated highway, be incommoded only, in common with the public generally, in the use of another highway, which consisted of the creek, but would suffer no damage, which would be special, or peculiar to himself. It is now too well settled to require argument, that such an inconvenience or obstruction, even if unauthorized and illegal, does not constitute an injury, for which an individual can maintain a private action, but that the legal remedy is at the suit of the public, by indictment or information for a public nuisance." Id., 326.

We conclude that *Clark* does not apply to the present case. "[T]he taking of [a] highway creates two easements: the public easement of travel, that permits the general traveling public to pass over the highway at will, and the private easement of access, that permits landowners who abut the highway to have access to the highway and to the connecting system of public roads." *Luf* v. *Southbury*, 188 Conn. 336, 341, 449 A.2d 1001 (1982). In *Clark*, this court determined that the plaintiff had been deprived only of his easement of travel, which is a right common to the public. *Clark* v. *Saybrook*, supra, 21 Conn. 326. This court previously has held, however, that, "where a town, even though it is carrying out the governmental duty of maintaining highways, discontinues a public highway which . . . provides the abutting owner with his only practical access to the public highway system, it inflicts on that abutter a direct injury to his right of access . . . ." (Internal quotation marks omitted.) *Cone* v. *Waterford*, 158 Conn. 276, 279, 259 A.2d 615 (1969); see also *Luf* v. *Southbury*, supra, 342 ("A landowner who, as a result

of governmental action, suffers a total and permanent loss of his right of access to the public way adjacent to his land and to the system of public roads is entitled to recover damages. Total deprivation of his right to access constitutes a taking of his property, an inverse condemnation of his property rights, in violation of article first, § 11 of the constitution of Connecticut and of the fifth amendment to the United States constitution."); *Park City Yacht Club* v. *Bridgeport*, 85 Conn. 366, 373, 82 A. 1035 (1912) ("the vacation of part of a street which destroys all access by property abutting on the remaining part of the street to the system of streets in one direction, thus putting the property on a cul-de-sac, has generally been held to constitute an actionable injury"); 4 Restatement (Second), Torts § 821C, p. 94 (1979);[11] 4 Restatement (Second), supra, § 821C, comment (f), p. 97 ("The right of access to land, that is, the right of reasonable and convenient ingress and egress, is itself a property right in the land. If the public nuisance interferes with immediate ingress and egress to the plaintiff's land, the nuisance is a private as well as a public one and the harm suffered by the plaintiff is particular harm differing in kind from that suffered by the general public, so that the plaintiff can recover for the public nuisance.").

In the present case, the plaintiffs alleged in their complaint that "[i]f Wellswood Road is closed and said barricade is erected by Hebron, [the] [p]laintiffs will be deprived of all access to the [subdivision site] and the

---

[11] Section 821C of the Restatement (Second) of Torts provides in relevant part: "(1) In order to recover damages in an individual action for a public nuisance, one must have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of the interference.

"(2) In order to maintain a proceeding to enjoin to abate a public nuisance, one must

"(a) have the right to recover damages, as indicated in Subsection (1) . . . ."

[property]."[12] As we have indicated, the interference with the right of access to land is a "particular harm differing in kind from that suffered by the general public." 4 Restatement (Second), supra, § 821C, comment (f), p. 97. Thus, the plaintiffs have alleged "a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole" and they have made a colorable claim that "this specific personal and legal interest has been specially and injuri-

---

[12] The defendants contend that the trial court, *Peck, J.*, improperly concluded that the plaintiffs have an easement of access over Wellswood Road under § 13a-55 in its ruling denying the defendants' motion to dismiss. They point out that the trial court, *Hon. Lawrence C. Klaczak*, judge trial referee, concluded otherwise after trial on the ground that "there is no definitive evidence that the . . . property even abuts . . . Wellswood [Road]," and suggest that the court could have dismissed the plaintiffs' complaint on this ground. It is clear to us, however, that the trial court, *Hon. Lawrence C. Klaczak*, judge trial referee, concluded only that § 13a-55 did not operate to *protect* the plaintiffs' preexisting easement of access over Wellswood Road *after* the defendants closed the road because, among other reasons, the plaintiffs had not proved that they were abutting landowners, not that the plaintiffs had no preexisting easement of access over the road in the first instance. Indeed, it is implicit in the portion of the trial court's memorandum of decision in which it considered the plaintiffs' claim that the defendants lacked the power to close Wellswood Road that it believed the plaintiffs had an easement of access over both Wellswood Road and any portion of Zola Road running between their property and Wellswood Road. Otherwise, there would have been no need for the court to address the issue of the defendants' power—the court simply could have concluded that the plaintiffs could not prevail because they had not proved that they ever had the easement of access with which the defendants allegedly had interfered. Moreover, the trial court expressly held that the plaintiffs could use Wellswood Road and Zola Road to access their property if they used the property for purposes other than the subdivision in support of its holding that the plaintiffs had not been irreparably harmed. Accordingly, we reject any suggestion that the complaint should be dismissed because the plaintiffs lacked an easement of access over Wellswood Road even before the defendants closed the road. Finally, we emphasize that we express no opinion in the present case as to whether the trial court, *Hon. Lawrence C. Klaczak*, judge trial referee, was correct that § 13a-55 would not operate to protect the plaintiffs' preexisting easement of access over Wellswood Road if their property did not directly abut the road.

ously affected by the [challenged action]." (Internal quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, supra, 275 Conn. 369. We conclude, therefore, that the plaintiffs had standing to bring this action.

The defendants claim, however, that, even if the plaintiffs had standing to bring an action for damages, "landowners never [have] standing to force a town to keep a road open for their private benefit." In support of this claim, the defendants again rely on *Clark* v. *Saybrook*, supra, 21 Conn. 326. As we discuss more fully later in this opinion, however, the plaintiffs in the present case, unlike the plaintiff in *Clark*, claim that the defendants lacked the power to close the road in the first instance, which would render the action of the defendants void ab initio.[13] Accordingly, we reject the defendants' claim.

We turn, therefore, to the merits of the plaintiffs' claim that the defendants acted in excess of their municipal powers when they closed Wellswood Road. It is well "settled that a municipality, as a creation of the state, has no inherent powers of its own, and has only those powers expressly granted to it by the state or that are necessary for it to discharge its duties and carry out its purposes." *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 367, 780 A.2d 98 (2001); see also *Avonside, Inc.* v. *Zoning & Planning Commission*, 153

---

[13] See *Pepe* v. *New Britain*, 203 Conn. 281, 293, 524 A.2d 629 (1987) ("[c]ontracts beyond the powers of a municipality are void" [internal quotation marks omitted]); *Sauter* v. *Mahan*, 95 Conn. 311, 314, 317, 111 A. 186 (1920) (votes of board of water and sewer commissioners purporting to reconsider assessment declared null and void when board had no authority to reconsider and rescind assessment); *Andrews* v. *Planning & Zoning Commission*, 97 Conn. App. 316, 324, 904 A.2d 275 (2006) (when planning and zoning commission lacked statutory authority to adopt subdivision regulation, amendment to subdivision regulations was void ab initio); *Gay* v. *Zoning Board of Appeals*, 59 Conn. App. 380, 388, 757 A.2d 61 (2000) (condition imposed by board on parcel that was not subject of variance application before it was void ab initio).

Conn. 232, 236, 215 A.2d 409 (1965) ("As a creature of the state, the . . . [town of Avon, whether acting itself or through its planning commission] can exercise only such powers as are expressly granted to it, or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation. . . . In other words, in order to determine whether the [action] in question was within the authority of the commission to enact, we do not search for a statutory prohibition against such an [action]; rather, we must search for statutory authority for the [action]." [Citations omitted; internal quotation marks omitted.]). In the course of exercising the powers expressly granted to it, such as the power to discontinue a road[14] and to lay out a new road,[15] a municipality may deprive a landowner of an access easement.[16] See *Cone* v. *Waterford*, supra, 158 Conn. 279–80 (town discontinued road that provided sole access to plaintiffs' property); *Park City Yacht Club* v. *Bridgeport*, supra, 85 Conn. 373 (access to plaintiff's property eliminated for all practical purposes when town moved road to new location). The statutes, however, do not expressly confer on municipalities the power to eliminate access easements. Accordingly, a municipality can eliminate an access easement only as a necessary incident to the proper exercise of an expressly granted power. See *Ganim* v.

[14] General Statutes § 13a-49 provides in relevant part: "The selectmen of any town may, subject to approval by a majority vote at any regular or special town meeting, by a writing signed by them, discontinue any highway or private way, or land dedicated as such, in its entirety . . . ."

[15] General Statutes § 7-148 (c) (6) (C) (i) provides in relevant part that any municipality shall have the power to "[l]ay out, construct, reconstruct, alter, maintain, repair, control, operate, and assign numbers to streets, alleys, highways, boulevards, bridges, underpasses, sidewalks, curbs, gutters, public walks and parkways . . . ."

[16] As we have indicated, in such cases, the elimination of the access easement constitutes a constitutional taking entitling the landowner to compensation. See *Cone* v. *Waterford*, supra, 158 Conn. 279–80; *Park City Yacht Club* v. *Bridgeport*, supra, 85 Conn. 373.

*Smith & Wesson Corp.*, supra, 367 (municipality can exercise unenumerated power only as "necessary for it to discharge its duties and carry out its purposes"). The scope of the powers delegated to municipalities by statute is a question of law over which our review is plenary. See *Matzul* v. *Montville*, 70 Conn. App. 442, 446, 798 A.2d 1002, cert. denied, 261 Conn. 923, 806 A.2d 1060 (2002).

In the present case, the defendants contend that their power to close Wellswood Road, thereby depriving the plaintiffs of the sole existing access to the property, is a necessary incident to the exercise of the town of Hebron's powers under General Statutes § 13a-99,[17] which authorizes towns to build roads "within [the towns'] respective limits," under General Statutes § 7-148 (c) (6) (C) (i)[18] and (7) (B) (i),[19] which allow towns to control streets and to regulate and to prohibit traffic, and under General Statutes § 8-23 (d) (1),[20] which autho-

---

[17] General Statutes § 13a-99 provides in relevant part: "Towns shall, within their respective limits, build and repair all necessary highways and bridges . . . ."

[18] See footnote 15 of this opinion.

[19] General Statutes § 7-148 (c) (7) (B) (i) provides in relevant part that any municipality shall have the power to "[r]egulate and prohibit, in a manner not inconsistent with the general statutes, traffic . . . [and] the operation of vehicles on streets and highways . . . ."

[20] General Statutes § 8-23 (d) (1) provides in relevant part: "Such plan of conservation and development shall (A) be a statement of policies, goals and standards for the physical and economic development of the municipality, (B) provide for a system of principal thoroughfares, parkways, bridges, streets, sidewalks, multipurpose trails and other public ways as appropriate, (C) be designed to promote, with the greatest efficiency and economy, the coordinated development of the municipality and the general welfare and prosperity of its people and identify areas where it is feasible and prudent (i) to have compact, transit accessible, pedestrian-oriented mixed use development patterns and land reuse, and (ii) to promote such development patterns and land reuse, (D) recommend the most desirable use of land within the municipality for residential, recreational, commercial, industrial, conservation and other purposes and include a map showing such proposed land uses, (E) recommend the most desirable density of population in the several parts of the municipality, (F) note any inconsistencies with the following growth management principles . . . (iii) concentration of devel-

rizes municipal planning commissions to adopt a plan of development and to "provide for a system of . . . streets . . . ." The defendants also claim that they have the power to close Wellswood Road because the proposed development would violate Hebron's road regulations.[21] We address each claim in turn.

With respect to the defendants' claim under § 13a-99, we agree that Hebron has the power to build roads within the limits of the town for the benefit of its own residents. That does not mean, however, that it has the power to close roads at the town border for the sole purpose of preventing residents of adjoining towns from using town streets.[22] Town roads are for the benefit of

opment around transportation nodes and along major transportation corridors to support the viability of transportation options and land reuse . . . ." Effective July 1, 2010, subsection (d) of § 8-23 will be redesignated as subsection (e).

[21] The defendants refer to § 13.5H (4) of the Hebron Public Improvement Specifications, which provides that "[t]he maximum length of a dead end road shall be 2,000 feet as measured from the gutterline of the intersected roadway to the center of the turnaround." They also point to § 6.4 (A) and (C) of the Hebron Subdivision Regulations, which provide, respectively, that "[a]ll streets shall conform to [§] 13, Public Improvement Specifications," and that "[w]here site conditions make through streets infeasible, cul-de-sacs may be permitted. Where a cul-de-sac is permitted and where it is feasible and desirable in the opinion of the [planning commission] to extend the road into adjoining properties, the road right-of-way shall extend to property lines for ultimate future extension. The maximum length of any cul-de-sac roadway shall be limited to 2,000 feet with a maximum [average daily traffic] of 200 vehicles per day."

[22] To the extent that the defendants rely on *Pizzuto* v. *Newington*, 174 Conn. 282, 386 A.2d 238 (1978), in support of their claim that they have no duty to residents of other towns, any such reliance is misplaced. In *Pizzuto*, the town of Newington barricaded a road at the town line between Newington and West Hartford in order to reroute traffic within the town of Newington away from a residential neighborhood in that town. Id., 285. A number of Newington residents brought an action to enjoin the closing. Id., 283. It is not clear from the opinion how the plaintiffs were harmed by the closing, but, presumably, they were deprived of the shortest route between their residences and certain newly constructed shops in West Hartford. See id., 286. The barricade was not intended, however, to prevent residents of West Hartford from using Newington roads. Indeed, there is no evidence that the residents of West Hartford were significantly affected by the closing in any way.

the general public, not just the residents of the town. See *Rudnyai* v. *Harwinton*, 79 Conn. 91, 94, 63 A. 948 (1906) ("[i]n maintaining and repairing the highways within their limits, municipalities act as agents of the [s]tate in the performance of a public duty, a duty imposed upon them by the [s]tate for the benefit of the general public"); *Wolcott* v. *Pond*, 19 Conn. 597, 604–605 (1849) ("the highways which are to be established by the towns, are not for their exclusive benefit, but also for that of the public at large" and legislature provided for judicial review of town's refusal to lay out road approved by selectmen because "the towns would have, or might imagine they had, a strong pecuniary interest in defeating a highway, from which the inhabitants supposed, that they might derive a benefit, not proportioned to the expense of its construction"). Accordingly, we reject this claim.

We turn next to the defendants' claim that they have the power to close Wellswood Road in order to prevent unsafe traffic conditions under § 7-148 (c) (6) (C) (i), which confers "the power to . . . control . . . streets," and § 7-148 (c) (7) (B) (i), which confers "the power to . . . [r]egulate and prohibit . . . traffic . . . [and] the operation of vehicles on streets and highways . . . ." We agree with the defendants—indeed, it is indisputable—that these statutes confer on municipalities the power to control streets and to regulate traffic in order to prevent unsafe traffic conditions. See *Cohen* v. *Hartford*, 244 Conn. 206, 207–208, 710 A.2d 746 (1998) (town has power to close road to automobile traffic for several hours each day to ensure pedestrian safety during peak use hours); *Pizzuto* v. *Newington*, 174 Conn. 282, 285–87, 386 A.2d 238 (1978) (town has power to close road to reroute traffic away from residential area). The municipality must exercise that power, however, "in a manner not inconsistent with the general statutes . . . ." General Statutes § 7-148 (c) (7) (B) (i). We conclude that, under the particular facts of the pre-

sent case, the defendants' exercise of the power conferred by these statutes to close Wellswood Road was inconsistent with the statutes governing the review of subdivision applications.

The authority to regulate the subdivision of land is conferred on planning commissions by General Statutes § 8-25. See *Lord Family of Windsor, LLC* v. *Planning & Zoning Commission*, 288 Conn. 730, 735, 954 A.2d 831 (2008). Most of the procedures governing review of subdivision applications are contained in General Statutes § 8-26, which authorizes a planning commission to hold a public hearing regarding any subdivision proposal if, in its judgment, specific circumstances require a hearing. Under General Statutes § 8-7d (f) (1) and (2),[23] planning commissions are required to give notice of subdivision applications to adjoining towns if "[a]ny portion of the property affected by a decision of such commission . . . is within five hundred feet of the boundary of the adjoining municipality" or if "a significant portion of the traffic to the completed project on the site will use streets within the adjoining municipality to enter or exit the site . . . ."[24] Adjoining towns that

[23] General Statutes § 8-7d (f) provides in relevant part: "The . . . planning commission . . . shall notify the clerk of any adjoining municipality of the pendency of any . . . plan concerning any project on any site in which: (1) Any portion of the property affected by a decision of such commission, board or agency is within five hundred feet of the boundary of the adjoining municipality; (2) a significant portion of the traffic to the completed project on the site will use streets within the adjoining municipality to enter or exit the site; (3) a significant portion of the sewer or water drainage from the project on the site will flow through and significantly impact the drainage or sewerage system within the adjoining municipality; or (4) water runoff from the improved site will impact streets or other municipal or private property within the adjoining municipality. . . . Such adjoining municipality may, through a representative, appear and be heard at any hearing on any such . . . plan."

[24] According to one authority, § 8-7d (f), formerly codified at General Statutes § 8-26f, shows "legislative intent to encourage cooperation between adjacent towns in approving subdivisions of land." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 10:8, p. 287; see Public Acts 2003, No. 03-177, §§ 5 and 14.

receive such notice may participate in any hearings on the subdivision application. General Statutes § 8-7d (f). In addition, there is little doubt that a town that is adversely affected by the decision of an adjoining town's planning commission to grant a subdivision application would have standing to appeal from the decision pursuant to General Statutes § 8-8 (b).[25] See *North Haven* v. *Planning & Zoning Commission*, 220 Conn. 556, 560–61, 600 A.2d 1004 (1991) (implicitly holding that town would have standing to appeal from decision by adjoining town's planning and zoning commission when adjoining town has violated statutory requirement to give notice to adjoining municipalities of specific project); see also *Torrington* v. *Zoning Commission*, 261 Conn. 759, 766, 806 A.2d 1020 (2002) (implicitly holding that town had standing to appeal from stipulated judgment between landowner and adjoining town's zoning commission that operated as conditional approval of landowner's rezoning application). Thus, the legislature has provided specific procedures to address concerns that a new subdivision in one town may have an adverse effect on traffic in an adjoining town.

In the present case, the town of Hebron received notice of and participated in the hearings on the plaintiffs' subdivision application. The traffic concern that it raised during those proceedings was precisely the type of concern contemplated by § 8-7d (f) (2). Because the statutes governing review of subdivision applications provide specific procedures for the town of Hebron to pursue a claim that the proposed subdivision will adversely affect traffic within the town, we conclude that those statutes control, and that the defendants' exercise of its powers under § 7-148 (c) (6) (C)

---

[25] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located . . . ."

(i) and (7) (B) (i) to control streets and regulate traffic was inconsistent with the legislative intent that land use disputes should be resolved in accordance with the procedures provided in the land use statutes. See *McKinley* v. *Musshorn*, 185 Conn. 616, 624, 441 A.2d 600 (1981) ("when general and specific statutes conflict they should be harmoniously construed so the more specific statute controls"); see also *Sheehan* v. *Altschuler*, 148 Conn. 517, 523–24, 172 A.2d 897 (1961) ("rule applicable to the corporate authorities of municipal bodies is that when the mode in which their power is to be exercised is prescribed, that mode must be followed"). Similarly, the fact that Hebron's planning and zoning commission has the power under § 8-23 to adopt a plan of development within the town and to provide for a system of streets in the town does not mean that the defendants have the power unilaterally to block access to property in an adjoining town for purposes of preventing traffic from a proposed subdivision from using the Hebron town streets. Accordingly, we conclude that the defendants lacked the power to close Wellswood Road under these circumstances. See General Statutes § 7-148 (c) (7) (B) (i) (municipalities have power to regulate traffic only "in a manner not inconsistent with the general statutes").

With respect to the defendants' claim that they have the power to close Wellswood Road because the proposed development would violate Hebron's road regulations, it is clear that those regulations did not confer any power on the defendants, but merely guided the exercise of the powers conferred by § 7-148 (c) (6) (C) (i) and (7) (B) (i). Having concluded that those statutes did not confer the power to close Wellswood Road under the particular circumstances of this case, we reject this claim.

We recognize that this court held in *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, 283 Conn.

369, 379–80, 926 A.2d 1029 (2007), that, when a property is zoned residential and the proposed use is consistent with that zoning, there is a "conclusive presumption . . . that [the] proposed use does not adversely affect traffic within the zone, and the defendant therefore cannot deny the application because of existing off-site traffic congestion. [T]he agency cannot turn down a site plan [or subdivision application] because of traffic problems on streets adjacent to the property. R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 49.14, p. 139. Under . . . our prior case law, [a planning commission may] have considered the existing traffic problems . . . only for the limited purpose of reviewing the internal traffic circulation on the site and determining whether the location of the proposed intersection [of the proposed roads] with [the existing roads] would minimize any negative impact of additional traffic to the existing traffic . . . ." (Internal quotation marks omitted.) The rationale of that case, however, was that, before a zoning commission adopts a zoning district, it will take into consideration the capacity and condition of the streets *"within the zone"*; (emphasis added) *Pansy Road, LLC* v. *Town Plan & Zoning Commission,* supra, 379; and determine that they are adequate for the permitted uses. Presumably, it will make this determination in consultation with all municipal agencies responsible for controlling streets and regulating traffic, which are therefore bound by the determination in later proceedings. See General Statutes § 8-3 (a) ("[n]o such [zoning district] . . . shall become effective or be established or changed until after a public hearing in relation thereto, held by a majority of the members of the zoning commission or a committee thereof appointed for that purpose consisting of at least five members"). In the present case, Wellswood Road was not within the same zone, or even within the same town, as the property. It is implicit in

§ 8-7d (f) (2) that a zoning commission cannot unilaterally bind an *adjoining town* to a determination that its streets are adequate to handle the traffic from a permitted land use within the first town. Thus, the presumption in *Pansy Road, LLC,* that a proposed use that is consistent with existing zoning will not adversely affect traffic on adjoining roads within the zone, would not have arisen in an appeal from the decision of the Columbia planning and zoning commission in the present case. Accordingly, we reject the defendants' claim that it had no choice but to close Wellswood Road because any appeal from the decision of the Columbia planning and zoning commission would have been futile.

Finally, we conclude that the defendants' reliance on *Nicoli* v. *Planning & Zoning Commission,* 171 Conn. 89, 93–94, 368 A.2d 24 (1976) (when subdivision regulations required new subdivision roads to connect to existing roads within town, planning and zoning commission could condition approval of development on connection of public road within subdivision to street within town in order to ensure access to subdivision by town services), and *Pizzuto* v. *Newington,* supra, 174 Conn. 285–86 (town could close road at town line in order to reroute traffic traveling to and from adjoining town), is misplaced. See also *Crescent Development Corp.* v. *Planning Commission,* 148 Conn. 145, 153, 168 A.2d 547 (1961) (planning commission could approve subdivision on condition that no road be constructed to portion of property located in another town until that portion of property had access to streets in second town). Although the use of the plaintiff's land was restricted by conditions relating to access to town roads in both *Nicoli* and *Crescent Development Corp.,* the access issues were litigated within the context of land use proceedings.[26] Accordingly, unlike the present case,

[26] Moreover, the impact of the Appellate Court's decision in *Andrews* v. *Planning & Zoning Commission,* 97 Conn. App. 316, 324, 904 A.2d 275

these cases did not involve any inconsistency between a town's power to regulate traffic and the legislative intent that land use disputes be resolved according to the procedures provided in the land use statutes. In *Pizzuto*, the statutes governing review of subdivision applications were not implicated because the closing of the road at the town line had not affected the use of any land. See footnote 22 of this opinion.

When a municipality has acted in excess of its delegated powers, the plaintiff is not required to show that he has been irreparably harmed by the ultra vires act or that damages are not available in order to obtain relief. Rather, ultra vires acts by municipalities are void ab initio. See footnote 13 of this opinion. Under the unique facts of this case, we conclude that the resolution of the Hebron board of selectmen to close and barricade Wellswood Road was void ab initio and, therefore, that the trial court improperly concluded that the plaintiffs could not prevail. We conclude, therefore, that the trial court must render judgment in favor of the plaintiffs voiding the October 6, 2005 action of the Hebron board of selectmen adopting the recommendation of the Hebron planning and zoning commission to close and barricade Wellswood Road.

---

(2006) (planning and zoning commission lacked power to adopt regulation requiring new subdivision roads to connect to town roads) on *Nicoli* is unclear.

We further recognize that both *Nicoli* and *Crescent Development Corp.* have been criticized on the ground that they "encourage planning commissions to restrict or stop development of land by taking a Berlin wall approach along town boundaries." 9 R. Fuller, supra, § 10.8, p. 287. Fuller goes on to state that "[t]his approach is not required, and development of land in two adjacent towns can occur with cooperation between their respective planning commissions, and provided . . . that each commission limit its actions to land within its borders. If essential services can be provided to the subdivision and there is access to it through public roads in another town, there is no valid reason for a commission to turn down an application which otherwise meets its own subdivision regulations. The fact that some emergency services may even be supplied by an adjacent town should not be a problem, provided the other town is willing to supply them." Id.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the plaintiffs.

In this opinion the other justices concurred.